ALFRED MILLS et al., executors,

*v.*

CHARLES L. KELLEY et al.

[Filed September 25th, 1901.]

The relative rights of several owners of mortgaged premises as among themselves, in the case stated explained, and their liability to discharge the mortgage indebtedness out of their respective parcels defined.

On bill and cross-bill, &c.

*Mr. Alfred E. Mills,* for Peter S. Conover.

*Mr. Edward M. Colie,* for Charles M. Lum et al.

STEVENS, V. C.

The bill is filed to foreclose eight mortgages held by the complainants as trustees of the estate of Stephen Vail. There is no dispute as to their validity or as to the amount due thereon. The question in the cause arises on the cross-bill filed by Frederick H. Lum and others, owners of a part of the mortgaged premises, against Peter and John Conover, owners of other parts thereof. It is whether the land of the Conovers is primarily liable to satisfy the mortgage indebtedness, or whether all the land is equally liable. The property, which lies in Chatham township, Morris county, belonged originally to Nancy Kelley. She deeded it, in several parcels, heavily encumbered, to her two sons, and they, in turn, having become insolvent, deeded it to an assignee in insolvency, who, on November 16th, 1896, at public auction, sold part of it to Charles M. Lum and part of it to the Conovers.

The question raised is twofold—*first,* what are the relative rights of the above-named defendants, so far as they depend upon the deeds given by Nancy Kelley to her sons, and *second,* have those rights been varied by what is alleged to have been said by Charles H. Lum at the assignee's sale.

Nancy Kelley obtained title by descent in the year 1869. The property was then subject to two of the mortgages now held by the complainants, one for $2,350 and the other for $1,650. On September 24th, 1873, she made two deeds, one to her son Charles L. Kelley and another to her son Harvey Kelley. The lot deeded to Harvey Kelley and another lot which she conveyed to him in 1886 are the premises purchased by Charles L. Lum at the assignee's sale. The claim of the Lums is that, by making these conveyances, Mrs. Kelley threw the burden of the mortgages primarily upon so much of the mortgaged property as she retained for herself.

There are certain rules of equity on this subject which are entirely settled by the course of decision in this state: (1) Where a mortgagor, for valuable consideration, conveys away part of the mortgaged premises, the portion retained is, in general, primarily liable for the payment of the mortgage debt. *Hoy* v. *Bramhall, 4 C. E. Gr. 569.* (2) Where the consideration is not valuable, but the deed contains the usual covenants, the same result obtains. *Gaskill* v. *Sine, 2 Beas. 400; Harrison* v. *Guerin, 12 C. E. Gr. 222.* But (3) where the conveyance is voluntary and there are no covenants, the part conveyed remains liable for its proportionate share of the mortgage debt. *Gray* v. *Hattersley, 5 Dick. Ch. Rep. 210; Jackson* v. *Condict, 12 Dick. Ch. Rep. 522.* These rules are founded upon equitable grounds. They are based upon the presumed intention of the parties, and will not be applied when there is competent proof of a contrary intention.

In the deed of September 24th, 1873, Nancy Kelley recites that Harvey Kelley is her son, and she then states that she conveys "for divers considerations and for  *  *  *  the sum of twenty-five dollars." Under the evidence, this conveyance was voluntary. It would not, therefore, without more, throw the burden of existing mortgages upon the remaining land. But it contains a covenant against the acts of the grantor, and it is the effect of this covenant that calls for consideration. As I have already stated, at the time the deed was executed the land was encumbered by two mortgages, neither of them made by Mrs. Kelley. As she did not make them, their existence did

not constitute a breach of her covenant. It seems clear, therefore, that the lot conveyed to Harvey remained subject to its proportionate share of the charge. The ground upon which equity throws the burden primarily upon the land that remains is either that the grantee, having paid full value for what he buys, ought not to pay any more, or, where the consideration is not valuable, that the grantor, having covenanted by deed of general warranty that there are no encumbrances, is bound to make that covenant good; in other words, that the grantee, and consequently the grantee's land, ought not, as against the grantor, to satisfy that which the grantor is, by a valid stipulation, under an obligation to pay. But where the conveyance is voluntary and there are no covenants, then equality is equity. There is no reason why the voluntary grantee should not take the land with any charge that may rest upon it, except in so far as the parties themselves have otherwise stipulated. In the case in hand there is no stipulation, expressed or implied, that the land granted will be relieved from any burden, except that which the grantor has *herself* imposed upon it; hence, as to the mortgages in question, she stands in the situation of one who has not covenanted.

When the deed of November 11th, 1886, was made by Mrs. Kelley to her son Harvey for the adjoining piece of land, the situation had somewhat changed. The two mortgages I have mentioned still subsisted, but Mrs. Kelley had, in the interval, put four other mortgages upon her property, three of $2,000 each and one of $5,000. As to the three made by her alone, there can be no doubt that the covenant in the deed of 1886, which is similar to that in the deed of 1873, extends to them and throws the burden of them primarily upon the remaining property.

As to the mortgage of 1876, however, the case is different. It was executed, as I have said, by Mrs. Kelley and also by Harvey and Charles Kelley. The bond which it secured was the joint bond of all, and in the absence of evidence to the contrary, it is to be presumed that all of them were the principal debtors thereon. As to this mortgage, the covenant in the deed to Harvey Kelley was broken as soon as made; but it is, at least, a question how far equity would permit Harvey to take advantage of the

breach. He was as much bound to pay the debt as his mother, and if it remained unpaid, he was equally in default. On the face of the paper her share was only one-third. It is obvious, therefore, that it would, if there was no other fact in the case, be inequitable to throw the burden of more than one-third of the mortgage debt upon the land which then remained to Mrs. Kelley.

But at this point another factor enters into the problem. On November 17th, 1886, a few days after the last conveyance to Harvey was made, Mrs. Kelley conveyed to him and to Charles the entire residue of the mortgaged premises by a deed which recited "natural love and affection and also $17,000" as its consideration. This deed, after stating that the property was conveyed subject to six mortgages (which it specifies), reads as follows:

"Which said several mortgages, amounting in the aggregate to the sum of $15,100, with all arrearages of interest due thereon, the said parties of the second part hereby assume and the same agree to pay off, satisfy and discharge; the said amount thereof having been taken and treated as a payment of so much of the consideration money hereinbefore in this conveyance expressed."

Two of the mortgages mentioned were the two which existed before Mrs. Kelley acquired title, and one (securing $2,000) was the mortgage which secured the joint bond of herself and her two sons.

It seems to me that this assumption clause did not have the effect of shifting that part of the burden of the first two mortgages which had theretofore rested on the lots conveyed to Harvey Kelley. In the first place, the assumption as to them was simply nugatory. Nothing is better settled in this state than the doctrine that an assumption by the grantee of the payment of a mortgage which the grantor is under no obligation to pay does not create any equity in favor of the mortgagee; and if the grantor conveys *all* the mortgaged premises, so that the clause does not in anywise operate to protect or relieve any interest that he (the grantor) may have, it is obvious that it gives him no substantial right of action.

In the second place, the question being one of intention, there is nothing in the transaction which shows that the grantor and

Mills *v*. Kelley.

grantees were consciously dealing with any other subject-matter than the land which was then being conveyed and with the burden then resting upon it. The intention, so far as appears or as may be reasonably conjectured, was to shift the burden, *just as it then stood,* from the grantor to the grantees—not to shift a burden resting upon other land which the grantor was not conveying and which was no longer hers. As the doctrine is purely equitable, it ought not to be so applied as to produce inequality where inequality is not deducible, either from the legal effect of the covenants or from the proved intention. The fundamental rule is that equality is equity, and this rule will only give away where either positive stipulation or some other rule of equity requires that it should. There seems, therefore, to be no ground for shifting the burden of the encumbrances so far as they rested upon the Harvey Kelley land.

This reasoning does not apply to the bond and mortgage made by Mrs. Kelley and her two sons. Assuming that a third part of the burden of that mortgage rested upon so much of the Harvey Kelley homestead as was conveyed by the deed of 1886, the assumption clause worked a substantial change in the legal relations of the parties. It relieved Mrs. Kelley of any claim to contribution in case her sons paid the debt. It operated to make them the principal debtors. They became personally and jointly bound to pay all that was due, and this being so, it would seem that the land which they jointly acquired became, in equity, chargeable with the payment of the debt before the land held in severalty by Charles and Harvey.

The result is that the Harvey Kelley homestead must bear its share of the $2,450 and $1,650 mortgages.

The evidence taken in the cause is nearly all directed to the question whether Charles M. Lum, at the assignee's sale, said, in the presence of the bidders there assembled, that, "in his opinion, the Harvey Kelley property would bear between $3,000 and $4,000 of the mortgages—say $3,500." This is the testimony of the defendant Peter Conover, the purchaser of the larger part of the property, and upon this evidence he bases a claim of estoppel. It is unnecessary to analyze the conflicting evidence on this subject. I think it clear that no estoppel is established.

Mr. Hinchman's testimony shows that Mr. Lum did not, at the time of the sale, know the dates of the respective deeds. It is improbable that what he said was, or was intended to be, anything more than the expression of an opinion as to what was the limit of liability resting on the Harvey Kelley tract. It is still more improbable that Mr. Conover bid upon and bought in the other tract because of that which was casually said by one who was at the time an entire stranger to him.

Mr. Runyon, the attorney of the assignee, testifies that a number of people, including the Conovers, asked about the amount of the encumbrances that the Harvey Kelley tract would bear, and that he told them publicly that he could not tell, and that the assignee could not tell what amount of the mortgage burden would fall upon the different pieces of land; that the purchasers were left to the public records in the county clerk's office, and must draw their own conclusions. In view of this official announcement, it is hard to believe that Mr. Conover relied upon what he admits was stated as opinion merely, by one who was not only a stranger, but who was actually bidding against him. Mr. Hinchman, one of Mr. Conover's witnesses, a lawyer employed in the office of his own counsel, testifies that, during the bidding upon the Harvey Kelley tract and after the alleged declaration by Mr. Lum, he (Hinchman) went to John Conover and told him that he thought he might bid more than $3,000 on the Harvey Kelley tract, because there was a possibility that the property would escape all the mortgages. Mr. Conover practically admits that even if the land bid in by Mr. Lum should be entirely relieved of all burden, he would still have a good bargain. I do not think any estoppel is proved.

If there are any other questions raised by the view of the relative rights of the parties taken in this opinion, they may be presented on the application to settle the decree.