UNITED STATES of America,
Plaintiff–Appellee,

v.

Charlene M. OWENS, a/k/a Charlie,
Defendant–Appellant.

No. 87–5074.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 3, 1988.

Decided June 7, 1988.

Rehearing Denied July 15, 1988.

Robert L. Bloom (Bloom & Julian, P.A., Baltimore, Md., on brief), for defendant-appellant.

James Christopher Savage, Sp. Asst. U.S. Atty. (Breckinridge L. Willcox, U.S. Atty., Baltimore, Md., on brief), for plaintiff-appellee.

Before WINTER, Chief Judge, and CHAPMAN and WILKINS, Circuit Judges.

WILKINS, Circuit Judge:

Charlene M. Owens appeals from her drug-related convictions in violation of 21 U.S.C.A. §§ 846 and 841(a)(1) (West 1981), and 18 U.S.C.A. § 2 (West 1969). We affirm.[1]

## I.

In October 1985 the Baltimore City Police Department began an investigation into what the government characterized as the "Elfe/Canady" heroin-trafficking organization. The Federal Bureau of Investigation and the Internal Revenue Service subsequently joined the investigation after several arrests and drug seizures. On June 25, 1986, after an extensive investigation including a series of wire communication interceptions, several search warrants were issued by a federal magistrate. One of the warrants described the place to be searched as "3901 Edgewood Road, Apartment 336, Baltimore, Maryland, ... a

1. This case was consolidated on appeal with *United States v. Bates,* 843 F.2d 1388 (4th Cir. 1988) (per curiam). However, since Owens and Bates were tried separately and raised unrelated issues on appeal, separate opinions are filed.

three-story multi-dwelling apartment house, brown entrance door, # 3901 affixed to premises, security lock on door."

The affidavit supporting this search warrant set forth facts which supported a probable cause finding that an apartment in the 3901 Edgewood Road building was leased to Michelle Cherry; that Owens (referred to by her co-conspirators as "Charlie") exercised control over this apartment; and that this apartment was being used as a storage place for heroin brought to Baltimore for distribution. Prior to applying for the warrant, records of the Baltimore Gas and Electric Company were reviewed to determine the exact number of "Charlie's" apartment in building 3901. The records listed the apartment number as 336.[2]

Within hours after this warrant was issued but prior to its execution, Phillip Wilson, an individual identified as a participant in the drug operation, was arrested. Wilson confirmed the factual assertion in the affidavit that an apartment in the 3901 Edgewood Road building was being used as a storage house for drugs. He admitted that he had recently delivered a shipment of narcotics to "Charlie's" apartment at 3901 Edgewood, which Wilson explained was the apartment located on the third floor on the right side.

On the morning of June 26, 1986 officers began to simultaneously execute five warrants. The officers executing the warrant at 3901 Edgewood had also prepared the supporting affidavit. They forced entry through the common door of building 3901 on the ground floor and proceeded to the third floor. There they discovered that there were two apartments on that floor but neither apartment was numbered 336. The apartment on the left was vacant and as the district court found, there was "no indication that anyone had ever occupied it." The apartment on the right was numbered 324. The officers knocked on the door of this apartment, and after receiving no response, they forcibly entered. Owens,

who identified herself to the officers as "Charlie," was found sitting in a bedroom. A briefcase from the bedroom closet was seized and later searched. It contained 600 bags of heroin which provided a basis for Owens' subsequent convictions.

Prior to trial, Owens sought to suppress the evidence seized from the apartment on the ground that the warrant was invalid. Following an evidentiary hearing, the suppression motion was denied by the district court. The court determined that the evidence was admissible on the basis that exigent circumstances justified the entry and search. Since the search was lawfully conducted pursuant to the warrant we need not address the validity of the search based on exigent circumstances.

## II.

The fourth amendment provides that search warrants will not issue unless they particularly describe the place to be searched. Evidence seized in violation of the particularity requirement is subject to suppression pursuant to the judicially created exclusionary rule. *See Weeks v. United States*, 232 U.S. 383, 398, 34 S.Ct. 341, 346, 58 L.Ed. 652 (1914); *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).

The particularity requirement prohibits general, exploratory searches. *Andresen v. Maryland*, 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976). A warrant meets the particularity requirement "if the description is such that the officer with a search warrant can, with reasonable effort, ascertain and identify the place intended." *Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). An erroneous description in the warrant, however, does not necessarily invalidate a warrant and subsequent search. *United States v. Ridinger*, 805 F.2d 818, 819 (8th Cir.1986); *United States v. Burke*, 784 F.2d 1090, 1092 (11th Cir.1986). As the Supreme Court has recently stated, limitations on the execution of search warrants

---

**2.** Owens does not contend that the 18–page affidavit supporting the search warrant did not supply ample probable cause. Her only challenge to the search is based on the fact that the apartment number was listed in the warrant as number 336 instead of 324.

should be examined in light of "the need to allow some latitude for honest mistakes that are made by officers in [this] dangerous and difficult process." *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 1018, 94 L.Ed.2d 72, 82 (1987).

Moreover, the exclusionary rule has undergone significant change in recent years, exemplified by the adoption of a good faith exception to the rule in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed. 2d 677 (1984). The Court in *Leon* considered "whether the Fourth Amendment exclusionary rule should be modified so as not to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause." *Id.* at 900, 104 S.Ct. at 3409. The Court found that when an officer acts in good faith reliance on a facially valid warrant, the purpose of the exclusionary rule would not be furthered by suppression of relevant and probative evidence.

In *Leon*, police officers obtained a warrant to search for drugs based upon an informant's tip. The warrant, although facially valid, was lacking in probable cause due to the insufficiency of the informant's credibility. Both the district court and the court of appeals found the evidence seized to be inadmissible pursuant to the exclusionary rule. The Supreme Court reversed, finding that "the officers' reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate." *Id.* at 926, 104 S.Ct. at 3422.

The Court also provided guidance on applying its newly-created warrant exception by listing four situations in which it would not be objectively reasonable for police officers to rely on a warrant. First, the Court stated that officers may not rely on a warrant issued on the basis of a deliberately false affidavit. *Id.* at 923, 104 S.Ct. at 3420. Officers also cannot rely on a warrant where the magistrate has wholly abandoned his neutral and detached role. *Id.*

Further, a warrant may not be relied upon if it is so lacking in indicia of probable cause that reliance by police officers would be unreasonable. *Id.* Finally, officers will not be allowed to claim reliance on a warrant if it is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Id.* It is important to note in regard to this last situation that the Court did not state that police officers can never reasonably rely on a facially deficient warrant. Indeed, in the companion case to *Leon* the Court held that the officers executing a search warrant were justified in relying on it even though it was facially deficient. *Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

The search warrant in *Sheppard* failed to describe with particularity the items to be seized. An officer had presented a magistrate with a warrant form for controlled substances because it was the only form he had access to during the weekend. The officer received the assurance of the magistrate that the necessary changes would be made so that the warrant authorized a search for evidence of a homicide. The magistrate, however, failed to make the requisite changes and the warrant executed by the officer was therefore technically deficient for failure to particularly describe the items to be seized. The Supreme Court upheld the officer's reliance on the warrant stating that "the exclusionary rule should not be applied when the officer conducting the search acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid." *Id.* at 987–88, 104 S.Ct. at 3427.

More recently, the Court in *Garrison* articulated the standards by which a search pursuant to a warrant should be judged. In *Garrison*, the Court upheld the validity of a search conducted at the wrong apartment. The warrant described the premises to be searched as "2036 Park Avenue third floor apartment." Relying on records of

the Baltimore Gas and Electric Company[3] the police reasonably concluded that the third floor contained only one apartment and that it was occupied by Lawrence McWebb. Actually, there were two apartments on the third floor, the second belonging to Garrison. After Garrison's apartment had been searched and narcotics and drug paraphernalia seized, the police realized that the third floor contained two apartments and that they had searched the wrong one. The Court affirmed Garrison's conviction holding that a search warrant must be judged "in light of the information available to [the officers] at the time they acted." 480 U.S. at ——, 107 S.Ct. at 1017, 94 L.Ed.2d at 81. The Court reasoned that before the factual mistake was discovered, the officers reasonably perceived McWebb's apartment and the third floor premises as one and the same. The officers' actions were "consistent with a reasonable effort to ascertain and identify the place intended to be searched." *Id.* at ——, 107 S.Ct. at 1019, 94 L.Ed.2d at 83. Although Garrison argued that the officers should have been required to verify the particular layout of the premises, the Court rejected this argument.

### III.

We find the search valid under the reasoning of *Garrison.*[4] Additionally, the rationale of *Leon* and *Sheppard* support the admissibility of the evidence.

The affidavit clearly presented probable cause to search "Charlie's" apartment in the 3901 Edgewood Road building. The error in the warrant arose from reliance on the records of Baltimore Gas and Electric Company which showed the apartment to be number 336 instead of 324. The issue presented is "whether that factual mistake invalidated a warrant that undoubtedly would have been valid if it had reflected a completely accurate understanding of the building's floor plan." *Garrison,* at ——, 107 S.Ct. at 1017, 94 L.Ed.2d at 81. When the error was discovered the most prudent course would have been for the officers to apply for another warrant which corrected the error. But, as the district court found, the officers were justified in their belief that there was a good likelihood that if narcotics were in the apartment they would be destroyed or removed unless immediate action was taken.[5]

The warrant authorized the search of an apartment on the third floor of building 3901. There were only two apartments on that floor and one appeared to have never been occupied. The affidavit clearly identified the apartment to be searched as one that was occupied and Wilson's statement confirmed the officers' observations that it had to be the one on the right. No other apartment fit that description. Based on this information, "the right number was readily ascertainable." *United States v. Bentley,* 825 F.2d 1104, 1109 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 240, 98 L.Ed.2d 198 (1987). Under all of these circumstances, "there was no probability of a mistaken search, and we cannot conclude that the inaccurate address in the warrant should operate to invalidate the search." *United States v. Clement,* 747 F.2d 460, 461 (8th Cir.1984).

An honest mistake was made by the police officers and their conduct should be gauged by the standard set forth in *Garrison.* As in *Garrison* the police verified their information regarding the identity of the apartment with the Baltimore Gas and Electric Company. The Court in *Garrison* reiterated that " '[b]ecause many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on

---

3. Ironically, this is the same utility company whose records incorrectly listed "Charlie's" apartment as 336 instead of 324.

4. The district court ruled on the motion to suppress prior to the filing of the *Garrison* decision in February 1987. The case was not cited by either party on this appeal.

5. The district court recognized that if police officers had entered the apartment building prior to the search or contacted the building manager to verify the apartment number they could have jeopardized the investigation by alerting those under surveillance.

facts leading sensibly to their conclusions of probability.'" 480 U.S. at —— n. 11, 107 S.Ct. at 1018 n. 11, 94 L.Ed.2d at 82 n. 11 (quoting *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)).

Suppression of the evidence here would clearly run counter to the reasoning of *Garrison.* The Court there articulated the underlying rationale which compelled rejection of the argument for suppression.

> It would brand as illegal the execution of any warrant in which, due to a mistake in fact, the premises intended to be searched vary from their description in the warrant. Yet in this case, in which the mistake in fact does not invalidate the warrant precisely because the police do not know of the mistake in fact when they apply for, receive, and prepare to execute the warrant, the police cannot reasonably know prior to their search that the warrant rests on a mistake in fact.

*Id.* 480 U.S. at —— n. 14, 107 S.Ct. at 1019 n. 14, 94 L.Ed.2d at 83 n. 14.

The officers had a reasonable and objective basis on which to conclude that the warrant authorized a search of the apartment numbered 324. This determination was much more than a calculated guess and cannot be described as an effort to conduct a fishing expedition. The officers were justified in using common sense and reliable information known to them outside the four corners of the warrant and affidavit to assist in determining the place actually authorized by the warrant to be searched. They were not prohibited from making a good faith interpretation of the warrant "in light of the information available to them at the time they acted." *Garrison,* at ——, 107 S.Ct. at 1017, 94 L.Ed.2d at 81.

A search must be viewed against the requirements of the fourth amendment and the goals of the judicially created exclusionary rule. The framers of the Constitution included the requirement that the place to be searched be described with particularity to protect citizens from random intrusion by government officials and general exploratory searches. The extreme sanction of exclusion would be inappropriate since this was not a random exploratory search or intrusion without probable cause. The officers searched the apartment which, based upon reason and reliable information, they concluded the warrant intended.

Our holding is not contrary to *Leon* for that decision did not foreclose reliance on every warrant which can be classified as facially deficient. And, our conclusion is supported by the Court's decision in *Sheppard,* where the failure to properly describe the items to be seized did not bar admission of probative evidence. While the warrant here was facially deficient because an incorrect apartment number was given, the deficiency was corrected prior to the search by personal observations and information on which one could reasonably and in good faith make a determination of the actual place the warrant authorized to be searched.

AFFIRMED.

HARRISON L. WINTER, Chief Judge, dissenting:

Even if I assume that the warrant in this case was valid,[1] I cannot agree that the search thereunder was validated by the holding in *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). I read *Garrison* to be limited to the situation where the police officers unwittingly

---

**1.** The affidavit upon which the warrant was issued did not explicitly set forth the basis for the police officers' purported knowledge of the number of the apartment at 3901 Edgewood Road in which Ms. Owens resided. This, alone, arguably invalidated the warrant. Moreover, at the suppression hearing there was evidence that the police obtained this information from the records of the Baltimore Gas and Electric Company, in contrast to the suggestion in the affida-

vit that the information may have been obtained from intercepted telephone conversations. A failure to disclose what should have been disclosed may have the effect of rendering inapplicable the good faith exception of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *See Garrison,* 480 U.S. at ——, 107 S.Ct. at 1017, 94 L.Ed.2d at 81; *United States v. Collins,* 830 F.2d 145, 146 (9 Cir.1987).

search the wrong place *before* they become aware of deficiencies in the warrant. In the instant case, the deficiencies in the warrant were known before the search was made. Thus, the police officers could not proceed on a good faith reliance on the validity of the warrant in making the search. I can only conclude that it was an illegal search, invalid under the Fourth Amendment unless another exception to the requirement of a valid warrant may be properly invoked.

The only other possible exception is that of exigent circumstances. But even if that doctrine may be invoked where, as here, the police created the exigency, I think that the search exceeded the exigency. I would therefore conclude that the search was invalid and the conviction obtained as a result of the use of illegally seized evidence should be overturned.

From a contrary determination, I respectfully dissent.

## I.

On this record it is clear that the police officers realized that the warrant recited the wrong apartment number before they entered Ms. Owens' apartment. Detective Norman Meads testified during the suppression hearing as follows:

We ascended the stairs to the third floor landing. As you come up the stairs,— again, there is an apartment door immediately to your right. When I got to the landing, I noticed that the only other apartment was to my immediate left. That apartment door was wide open.

I peered inside and it was obviously a vacate [sic] apartment. No one lived in it, there was no furniture, there was no sign that anyone had occupied that particular place.

To my dismay I noticed that the apartment door to the immediate right was not number 336. But taking into consideration what Mr. Wilson had provided,— the information that he had provided, based on our surveillance prior to that, based on the fact that we made noise entering the building, and I was afraid that someone inside the apartment was going to destroy the evidence, I took those totality of circumstances into consideration and knocked on the apartment that was labeled 324, [w]aited a reasonable amount of time and when no one responded, the door was forced entry [sic].

A. 107–08. Detective Meads makes the source of his dismay explicit: the warrant did not contain the correct apartment number, and he was forced to rely upon information Wilson made known to him after the warrant was issued and his own determination of Wilson's credibility,[2] in deciding that the apartment was Ms. Owens' residence. It is thus readily apparent that as Detective Meads led his officers in the entry and search of her private dwelling, he knowingly acted outside the warrant. In almost so many words, he told the district court he lacked even subjective belief in the warrant's accuracy in specifying the place to be searched, instead noticing with dismay "that the apartment door to the immediate right was not number 336." In

---

2. As the majority states, after the warrant was issued but before it was executed, the police arrested alleged co-conspirator Phillip Wilson. Wilson told the police where "Charlie's" apartment was located, and there is evidence that the police received this information just hours before they entered Charlene Owens' apartment. The district court found that the police made their own determination that Wilson's information was credible. A. 142 n. 4. As a matter of temporal logic, Wilson's information can be of no relevance to a determination of whether the officer's "reliance on the magistrate's probable-cause determination" was objectively reasonable, *see United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984).

The police themselves may have correctly judged Wilson to be a reliable source of information, but a determination of probable cause relying in part on the credibility of informant Wilson must, under *Leon,* be made by the magistrate, not the law enforcement officers, based upon whether the informant's information, given the "totality of circumstances," *see Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), established alone or in conjunction with other information the existence of probable cause as to the place to be searched.

As below, the information Wilson provided is of legal relevance as to whether the police lawfully entered the apartment pursuant to exigent circumstances.

short, Detective Meads circumvented the Fourth Amendment warrant requirement for a showing of probable cause as to the place to be searched. For all that appears, he might have felt justified to search any other apartment in the entire building if he were acting in reasonable reliance on the warrant.

In order for a search pursuant to a warrant to protect Fourth Amendment rights, the search warrant normally must be issued by a neutral and detached judicial officer upon an affidavit establishing probable cause. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), establishes an exception to the warrant requirement for searches in which police officers have an objective good faith belief in the validity of the probable cause determination, provided "the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [is] objectively reasonable...." 468 U.S. at 922, 104 S.Ct. at 3420. The rationale for this good faith exception is that there is no deterrence effect associated with application of the exclusionary rule in cases where the police have a reasonable good faith belief in the magistrate's probable cause determination. *See Leon*, 468 U.S. at 916–17, 104 S.Ct. at 3417.

The Supreme Court's decision in *Garrison* provides no support for the majority's holding that law enforcement officers may correct a search warrant's facial deficiency and the magistrate's probable cause determination as to the place to be searched by their own personal observations and information from which they alone "reasonably" divine the "actual" place the warrant authorized to be searched. Far from allowing officers to cure deficient warrants with what amounts to curative *sua sponte* probable cause determinations, the Supreme Court in *Garrison* sought to address warrant deficiencies that came to light after the search had commenced. The Supreme Court reasoned:

> Prior to the officers' discovery of the factual mistake [after entry], they perceived McWebb's apartment and the third-floor premises as one and the same;

therefore their execution of the warrant reasonably included the entire third floor.

480 U.S. at ____, 107 S.Ct. at 1019, 94 L.Ed.2d at 83 (footnote omitted).

The majority repeatedly quotes in isolation the *Garrison* Court's phrase "in light of the information available to [the officers] at the time they acted," 480 U.S. at ____, 107 S.Ct. at 1017, 94 L.Ed.2d at 81. I do not think that the Supreme Court, by use of this phrase, intended to alter radically *Leon* and its progeny and to hold that police officers could cure deficient warrants by information available to them after the warrant is issued. The Supreme Court was referring to the fact that the *Garrison* officers were *not* aware of the warrant's deficiency when they applied for a search warrant or began their search, as the context of this phrase reveals:

> Plainly, if the officers had known, or even if they should have known, that there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude respondent's apartment from the scope of the requested warrant. But we must judge the constitutionality of their conduct *in light of the information available to them at the time they acted*. Those items of evidence that emerge after the warrant is issued have no bearing on whether or not a warrant was validly issued.... *The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing magistrate.*

480 U.S. at ____, 107 S.Ct. at 1017, 94 L.Ed.2d at 81 (emphasis added, footnotes omitted). Faithful to the *Leon* requirement of objectively reasonable good faith in a judicial officer's probable cause determinations, the Supreme Court in *Garrison* stated:

> If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, *and thus had been aware of the error in the warrant, they would have been obligat-*

ed to limit their search to *McWebb's apartment*. Moreover, as the officers recognized, they were required to discontinue the search of respondent's apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant.

480 U.S. at ——, 107 S.Ct. at 1018, 94 L.Ed.2d at 82 (emphasis added).

Thus the Supreme Court in *Garrison* repeatedly paid respect to *Leon*'s requirement that law enforcement officers have an objective good faith belief in the validity of the warrant. I would not ignore such clear language and construe *Garrison* otherwise. I am in strong disagreement with the majority's concluding language that a facially deficient warrant can be "corrected prior to the search by personal observations and information on which one could reasonably and in good faith make a determination of the actual place the warrant authorized to be searched." In Fourth Amendment jurisprudence, neutral magistrates, not police officers, make probable cause determinations. A contrary result eviscerates *Leon*'s good faith requirement and associated deterrence rationale. There can be no legally relevant principle of limitation on general searches if officers are given the power to cure *sua sponte* facially deficient warrants after they have been issued.

## II.

The district court declined to apply the exclusionary rule, *see Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), holding that the search and seizure were pursuant to exigent circumstances in light of the officers' justifiable fear that Ms. Owens would destroy drugs in apartment 324. I would conclude otherwise because the law enforcement officers failed to limit the scope of their search to any such exigency, contrary to the Supreme Court holdings in *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), and *Arizona v. Hicks*, 480 U.S. 321,

107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), that a warrantless search must be strictly circumscribed by the exigencies which justified its initiation.

Detective Meads testified at the suppression hearing as follows:

I was the first one to enter the apartment. As you enter the door immediately, Your Honor, there's a living room. There was virtually no furniture at all in the living room. So I,—and no one was there, so I proceeded into the back hallway.

It was a two-bedroom apartment, with a small bathroom. To my immediate left, once I entered, I observed a mattress lying on the floor, and the defendant, Charlene Owens, had sat up and was sitting on the mattress. I walked in, identified myself as a police officer, and explained to her that we had a search and seizure warrant for the premises.

As soon as I said that we had a search and seizure warrant premise [sic], again Ms. Owens was seated on the mattress on the floor. She looked to her immediately right into a closet. The closet door was slid open. And on the floor was a small.—was a briefcase, and she looked directly at that briefcase, momentarily, and then looked back at me.

A. 111–12. The district court thus did not clearly err in finding as follows:

Meads was the first one to enter the apartment. Once inside, he observed that there was virtually no furniture in the living room. He proceeded to the back hallway where he encountered Owens sitting on a mattress on the floor of one of the two bedrooms. He explained that he was a police officer, and that he had a warrant to search the apartment. As soon as he said he was going to search the premises, Ms. Owens momentarily glanced toward the closet at a briefcase.

A. 144. The record and the district court's findings are ambiguous at best as to whether the briefcase was within the officers' line of vision. There is no evidence in the record on appeal that the briefcase was within the area of Ms. Owens' immediate

control. The district court also found that the briefcase was seized and later opened at an F.B.I. office, wherein six hundred bags of heroin were found.

I regard as an open question whether the police could lawfully enter Ms. Owens' apartment by force and search and seize evidence pursuant to an exigency of their own creation.[3] There is no need however to reach this issue. Even if the police had a right to enter Ms. Owens' apartment pursuant to an exigency of their own making in order to prevent the destruction of any drugs in her apartment, the officers' subsequent actions exceeded in time and place the limited scope of any such exigency.

Absent exigent circumstances or a lawful search pursuant to a warrant, the search of one's home when effected through trespass violates the Fourth Amendment. *United States v. Van Dyke*, 643 F.2d 992, 993 (4 Cir.1981). A district court's finding of exigent circumstances must be sustained unless clearly erroneous. *United States v. Turner*, 650 F.2d 526, 528 (4 Cir.1981).[4]

A determination that an exigency exists does not, however, justify all subsequent searches and seizures. The search must be strictly limited to the extant exigency. In *Mincey*, the Supreme Court was unanimous in its holding that the doctrine of exigent circumstances did not permit the police to undertake a full-fledged search of a murder suspect's apartment. The Court, quoting *Terry v. Ohio*, 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968), repeated that "a warrantless search must be 'strictly circumscribed by the exigencies which justify its initiation.'" 437 U.S. at 393, 98 S.Ct. at 2413.[5] The district court's opinion denying Ms. Owens' motion to suppress does not contain express findings on the duration of the exigency.

It is clear on this record that any exigency allowing lawful entry stemming from the need to prevent destruction of evidence ceased once the officers entered Ms. Owens' apartment, securing the premises. Such an exigency certainly was not coextensive with the opening of the locked briefcase, presumably hours later, at an F.B.I. office. We applied similar logic, citing *Mincey*, in *United States v. Dart*, 747 F.2d 263, 268 (4 Cir.1984):

> [E]ven if [the officers] had acted properly in removing the blanket under the exigent circumstances, they would not have then been entitled to open sealed packing crates or zippered pouches found in the pile.

*See also United States v. Calandrella*, 605 F.2d 236 (6 Cir.) (warrantless search of

---

**3.** The instant facts would seem to militate in favor of lawful entry, given both the officers' reasonable fear that evidence would be destroyed and their good faith belief in the validity of the warrant at the time they created the exigency by noisily entering the first floor of the apartment building. *But cf. United States v. Collazo*, 732 F.2d 1200, 1204 (4 Cir.1984) (government not allowed to plead its own lack of preparation to create an exigency justifying warrantless entry), *cert. denied sub nom. Alvarez v. United States*, 469 U.S. 1105, 105 S.Ct. 777, 83 L.Ed.2d 773 (1985).

**4.** In *Turner*, we identified five factors bearing on whether an exigency exists:

> (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) the officers' reasonable belief that the contraband is about to be removed or destroyed; (3) the possibility of danger to police guarding the site; (4) information indicating the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband.

650 F.2d at 528, *citing United States v. Rubin*, 474 F.2d 262, 268–69 (3 Cir.), *cert. denied sub nom. Agran v. United States*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). In reviewing the district court's finding of exigent circumstances, arguably these factors must be supplemented by the gravity of the underlying offense, a factor employed by the Supreme Court in the context of a warrantless arrest. *See Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984).

**5.** In *Hicks*, the Supreme Court considered an entry and search of an apartment from which a bullet was fired. An officer suspected that stereo equipment in the apartment was stolen and proceeded to move some stereo components. The Supreme Court stated that merely inspecting parts of the turntable that came into view would have been proper, but moving the components and exposing to view concealed portions of "the apartment or its contents" constituted an invasion of privacy unjustified by the exigent circumstances that validated entry. 480 U.S. at ——, 107 S.Ct. at 1152, 94 L.Ed.2d at 354.

briefcase at F.B.I. office improper because any danger that the defendant would take a weapon from the briefcase or destroy evidence in the briefcase had subsided), *cert. denied sub nom. Kaye v. United States*, 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979); *United States v. Robertson*, 833 F.2d 777, 785–86 (9 Cir.1987) (post-arrest, warrantless search of backpack would not be justified on grounds of continuing exigency). Ms. Owens' glance toward a closet as she sat on a mattress in her bedroom did not make a warrantless, and hence presumptively unreasonable,[6] search reasonable, especially in light of the district court's finding that the officers announced they had a search warrant and would search her apartment before she glanced toward the bedroom closet. After lawful entry pursuant to exigent circumstances, a search cannot be regarded as "strictly circumscribed" to the exigency if the police's subsequent ability to conduct warrantless searches is limited only by so far as the defendant's eyes can see.[7]

I perceive no other basis on which to make admissible the seized briefcase and drugs found therein. The record does not contain evidence that the briefcase was in plain view of the officers from where they stood in Ms. Owens' bedroom before they commenced search of her bedroom closet. Assuming that the officers had probable cause to believe the Ms. Owens had drugs in the briefcase, *see Arizona v. Hicks*, 480 U.S. at ——, 107 S.Ct. at 1153, 94 L.Ed.2d at 355 (probable cause is required in order to invoke the "plain view" doctrine), the opening of the locked briefcase at an F.B.I. office cannot be justified by recourse to the plain view doctrine on this record.[8] Similarly, the record does not support a finding

that the briefcase was within Ms. Owens' reach. *See Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969) (limiting warrantless search incident to valid arrest to area "into which an arrestee might reach," the area of immediate control within which suspect could gain possession of weapon or destructible evidence); *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (search of footlocker more than an hour after federal agents gained exclusive control cannot be viewed as incident to arrest); *cf. Cupp v. Murphy*, 412 U.S. 291, 295–96, 93 S.Ct. 2000, 2003–04, 36 L.Ed.2d 900 (1973) (suggesting scope of search more restrictive in absence of formal arrest and warrant).[9]

Finally, I am not persuaded by the additional basis for admissibility advanced by the government during appellate oral argument. Government counsel argued to this Court:

I would not rely upon the search incident to lawful arrest at that point. My argument would be very similar to the *Ross* situation.... And that is that when officers have the right to—in this case probable cause to search the apartment—there is not a bright line that is drawn with regard to containers. If there is probable cause and exigencies to enter that apartment, I would suggest to the Court that probable cause covers the contents of the apartment with respect to where the object of their search could be found.

The government provided a citation to *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), as authority for this proposition. *Ross* involves

---

6.  *See Payton v. New York*, 445 U.S. 573, 586 & n. 25, 100 S.Ct. 1371, 1380 & n. 25, 63 L.Ed.2d 639 (1980).

7.  As Judge Learned Hand once observed, "it is small consolation to know that one's papers are safe so long as one is not at home." *Quoted in Chimel*, 395 U.S. at 767–68, 89 S.Ct. at 2042.

8.  *See Coolidge v. New Hampshire*, 403 U.S. 443, 466–69, 91 S.Ct. 2022, 2038–40, 29 L.Ed. 564 (1971) (plurality) (a valid plain view seizure must be preceded by lawful entry; must involve inadvertent discovery of evidence; and must

involve seized goods which are immediately apparent as evidence); *United States v. Fawole*, 785 F.2d 1141, 1145 (4 Cir.1986) (applying these conditions).

9.  There is no evidence in this record that the police, in announcing to Ms. Owens that they had a warrant and intended to search her apartment, sought to effect a protective sweep incident to arrest. *See United States v. Standridge*, 810 F.2d 1034, 1037 (11 Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 2468, 95 L.Ed.2d 877 (1987).

warrantless automobile searches, and provides no support for a search of a locked briefcase found in the bedroom closet of a private dwelling. *See, e.g., Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040 (authorization of search into area arrestee might reach does not extend to searches of "desk drawers or other closed or concealed areas in [the] room itself"); *Payton v. New York,* 445 U.S. 573, 586 & n. 25, 100 S.Ct. 1371, 1380 & n. 25, 63 L.Ed.2d 639 (1980) (warrantless intrusion of the home presumptively unreasonable).

### III.

To summarize, in my view, *Garrison* does not support the majority's drastic revision of the central principles of Fourth Amendment jurisprudence. Absent consent to search or specific and well-delineated exceptions to the warrant requirement,[10] the *Leon* exception to the exclusionary rule is limited to searches for which the police have a reasonable good faith belief in the validity of a neutral and detached magistrate's probable cause determination. It does not extend to information acquired after the warrant is issued. Unless and until the Supreme Court holds otherwise, in my view, only one result is possible in this case. I would affirm the district court's holding, not contested by the government on appeal, that because the officers did not rely in objectively reasonable good faith on a neutral and detached judicial officer's probable cause determination as to the place to be searched, *Leon*'s exception to the exclusionary rule does not apply.

In seizing a locked briefcase in Ms. Owens' closet and opening it later at an F.B.I. office without a warrant, the law enforcement officers clearly exceeded the scope of any exigency they themselves created when they broke into the apartment building. Their unlawful search of the briefcase does not fall within other exceptions to the warrant requirement for searches of

a private dwelling, and I would therefore reverse the district court's denial of Ms. Owens' motion to suppress.

Because the district court erred in failing to suppress evidence obtained in a violation of Ms. Owens' Fourth Amendment rights, I would reverse Ms. Owens' judgment of conviction and grant her a new trial.

---

**10.** The Supreme Court observed in *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984):

> Prior decisions of this Court ... have emphasized that the exceptions to the warrant requirement are few in number and carefully delineated, and that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests.

*Id.* at 749–50, 104 S.Ct. at 2097 (internal quotation and citation omitted).