**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                              No. 94-5709

WILLIAM WILEY RODENHAUSER,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CR-92-0384-L)

Argued: September 29, 1995

Decided: June 18, 1996

Before RUSSELL and WIDENER, Circuit Judges, and
CHAPMAN, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Charles Bonsib, MARCUS & BONSIB, Green-
belt, Maryland, for Appellant. Jamie M. Bennett, Assistant United
States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:**
Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A grand jury for the District of Maryland indicted William Wiley Rodenhauser on October 8, 1992. The two count indictment charged Rodenhauser with possession of firearms by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (count one) and possession of components for an unregistered explosive device in violation of 26 U.S.C. §§ 5841, 5861(d) (count two). Rodenhauser entered a conditional plea of guilty to count one on April 23, 1993 pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure. The district court held hearings on Rodenhauser's pretrial motion to suppress evidence and denied the motion. The court sentenced Rodenhauser to sixteen months imprisonment, a fine of $20,000, and three years of supervised release upon completion of his prison term. The court also dismissed count two on motion of the United States.

Rodenhauser appeals the denial of his motion to suppress. He challenges a police search of his property on March 27, 1990 and the search warrant that issued on May 8, 1990 based on information gathered during the search in March. Finding no error, we affirm.

This case began with a Prince George's County Deputy Sheriff's attempted service of a civil writ of execution on a judgment. Deputy Pettiford attempted to execute the writ on March 26, 1990, but was unable to do so.**1** As he was leaving the Rodenhauser farm, Pettiford noticed a dump truck on the farm, so he called in the license plates to obtain registration information to see if the dump truck would satisfy the outstanding judgment against Rodenhauser. When Pettiford

_____

**1** When Deputy Pettiford arrived at the Rodenhauser farm, some geese or ducks were pecking at the door of his car so that he was unable to get out of the car. Pettiford also testified that he could not get anyone's attention in the house.

2

learned that the tags were registered to a pickup truck, not the dump truck on which they were displayed, he had the Sheriff's Department dispatcher radio the county police.

That afternoon Detective Fowler from the Prince George's County Police Auto Theft Unit called Pettiford about the dump truck. Fowler wanted to arrange a time to again attempt to execute the writ. Pettiford spoke with both his Lieutenant and his Captain about Fowler accompanying him the next day because the police department is a separate county agency from the sheriff's department. Both approved the arrangement. Pettiford returned to the Rodenhauser farm the next day, March 27, 1990, with members of the Auto Theft Unit, to execute the writ.

The police officers inventoried the property on the farm, including vehicles and farm equipment. Fowler researched the items on the list, discovered that some items were stolen, and applied for a search warrant to search the property and seize the stolen items. Fowler received the warrant on May 8, 1990 and executed it on May 10, 1990. Once inside Rodenhauser's front door, the police saw piles of guns in the living room. Rodenhauser was charged with possessing forty-one firearms in violation of 18 U.S.C. § 922(g)(1).

The denial of Rodenhauser's motion to suppress is a question of law, which we review de novo, but the findings of fact underlying the district court's decision are subject to the clearly erroneous standard. United States v. Ramapuram, 632 F.2d 1149, 1155 (4th Cir. 1980), cert. denied, 450 U.S. 1030 (1981). The Supreme Court has stated that the Fourth Amendment applies in the civil context as well as the criminal context. Soldal v. Cook County, 506 U.S. 56, 66-67 & n.11 (1992). When analyzing the legality of a search or seizure, a court should rely on "objective facts and not subjective intentions" to "best promote[ ] the protections of the [F]ourth [A]mendment." Blair v. United States, 665 F.2d 500, 506 (4th Cir. 1981).

The district court found that the police were lawfully on the Rodenhauser farm on March 27, 1990 for two alternative reasons. First, the court found that Prince George's County Code § 18-135(a), which lists the duties of the county police, authorizes the police to help

3

Detective Pettiford execute the writ of execution. [2] This finding of fact is not clearly erroneous; considered as a matter of law, it is also correct. We need not address the alternative reason [3] because the first reason supports the court's finding that the police were lawfully on the premises.

Having found that the March 27 entry was lawful, we now address Rodenhauser's claims that the May 8 search warrant is invalid. Rodenhauser challenges the warrant for many reasons: (1) that the search warrant is a general warrant, (2) that the warrant does not authorize entry into Rodenhauser's residence, (3) that the warrant contains misleading information and omits information that negates probable cause, and (4) that the affidavit in support of the warrant does not establish a nexus between Rodenhauser's residence and the allegedly stolen property.

Rodenhauser claims that because the warrant authorizes the search of 3511 Church Road, Rodenhauser's mother's residence, and not 3513 Church Road, Rodenhauser's residence. He contends the warrant either limits the search to his mother's house or becomes a general warrant if one ignores the house number. This circuit has held that an incorrect address in a warrant does not automatically invalidate the search when there is no probability of a mistaken search. United States v. Owens, 848 F.2d 462, 465 (4th Cir. 1988). In this

_____

[2] The Prince George's County Police Department's duties include:

> (1) The protection of life and property.
>
> (2) The preservation of peace and order.
>
> (3) The prevention of crime.
>
> (4) The arrest of all violators of the law.
>
> (5) The enforcement of this Code and all other laws and ordinances.
>
> (6) The prompt service of all summonses and court papers as required by law.

Prince George's County, Md., Code § 18-135(a) (1991).
[3] The court also found there was probable cause to believe the license plates on a dump trunk were stolen.

case, the warrant specifically describes four buildings to be searched with a physical description and reference to the Prince George's County Tax Assessment land records grid map. Deputy Pettiford testified that he was familiar with the property and with who lived in what house because he had been to the property before. The district court found that there was no probability of a mistaken search, and based on the record before us, we cannot say that the court's finding was clearly erroneous.

Rodenhauser's argument that the search warrant does not authorize entry into the house is equally misplaced. Rodenhauser claims that the police completed their inventory before entering the house. The record is not clear on when the inventory was completed. In any event, the officers must serve the search warrant. Md. Rule 4-601. At oral argument, Rodenhauser argued that the police could have left the warrant on the property, however, Rodenhauser was home at the time of the search. Maryland Rule 4-601(c) requires that police leave a copy of the warrant with the person, if present, from whom the property is taken and allows police to leave the warrant in a conspicuous place on the premises only if neither that person nor another person apparently in charge of the premises is present.

When the officers entered the house, the guns were strewn about the living room in plain view.[4] In Horton v. California, 496 U.S. 128 (1990), the Supreme Court set forth three requirements for the plain view exception of a warrantless seizure: (1) the item's incriminating character must be readily apparent, (2) the officer must be "lawfully located in a place from which the object can be plainly seen," and (3) the officer must have a "lawful right of access to the object itself." Horton, 496 U.S. at 136-37. The police saw the guns from the front doorway of Rodenhauser's house. Given that the police had to serve the search warrant, the police were lawfully in the front doorway, and the incriminating character of the guns was readily apparent.

We have reviewed Rodenhauser's remaining arguments and are of opinion they are without merit.

_____

[4] The police may not have been relying on the search warrant when they entered the house. They may have been relying on an arrest warrant. Even if that were the case, our opinion would remain the same.

Accordingly, the judgment of the district court is

<u>AFFIRMED</u>.

6