**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                 No. 95-5970

ROSS AVON SELLMAN,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, Chief District Judge; Herbert N. Maletz,
Senior Judge, sitting by designation.
(CR-95-111-WMN)

Argued: March 7, 1997

Decided: June 19, 1997

Before WILKINSON, Chief Judge, and RUSSELL and
HALL, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Harvey Greenberg, LAW OFFICES OF HARVEY
GREENBERG, Towson, Maryland, for Appellant. Martin Joseph
Clarke, Special Assistant United States Attorney, Baltimore, Mary-
land, for Appellee. **ON BRIEF:** Lynne A. Battaglia, United States
Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Ross Avon Sellman appeals his drug-related convictions and sentence on a variety of grounds. The only issue warranting exposition is whether an inaccurate description of the car listed in the search warrant required suppression of the evidence found therein.**1**

I.

Based on information supplied by a confidential informant, Baltimore City Police Officers Willie Grandy and Darrell Wayne Townsend investigated the illegal narcotic trafficking activities of Ross Avon Sellman during January 1995. Grandy conducted surveillance of Sellman's primary place of residence, 2612 Oswego Avenue. Townsend conducted surveillance in and around 1730 Smallwood Street, a known "shooting gallery,"**2** where Sellman distributed narcotics to his street dealers. On each day of surveillance, Grandy observed Sellman leave his house carrying a small dark handbag and drive away in a 1982 black Plymouth four-door vehicle with Maryland license BMT-002. When Townsend observed Sellman's arrival at the shooting gallery, he noted that Sellman carried a small dark handbag and that narcotics trafficking subsequently increased in the vicinity.

On January 23, Grandy and Townsend applied for and received warrants to search Sellman, the black Plymouth with Maryland license BMT-002, the shooting gallery, and two other residences -- one of which was Sellman's home. The first search warrant authorized the search of Sellman and 1730 N. Smallwood Street. The sec-

_____

**1** We do not address the remaining issues raised by Sellman as we hold them to be meritless.
**2** A shooting gallery is a house used for the sale and use of narcotics, specifically heroin.

ond search warrant authorized the search of Sellman, 2224 Walbrook Avenue, and a 1982 Plymouth, black four-door, with Maryland license BMT-002. The third search warrant authorized the search of Sellman, 2612 Oswego Avenue, and a 1982 Plymouth, black four-door, with Maryland license BMT-002. Nine days later on January 31, officers from the Baltimore City Police Department prepared to execute the search warrants simultaneously. After observing Sellman exit his home carrying the same handbag, Grandy was surprised to see Sellman get into a blue Cadillac with Maryland license BMT-002 and drive away. A helicopter monitored Sellman's movements from above, and Grandy alerted the other officers involved in the execution of the search warrants.

When the blue Cadillac arrived in the vicinity of the shooting gallery, officers stopped the vehicle. Sellman, the only occupant, was observed holding a handbag. A search of the handbag yielded fifty-eight bags of heroin with star markings, twenty-one vials of cocaine with black markings, and a loaded .32 caliber revolver. A search of the car yielded personal papers in Sellman's name, and a registration card revealing that the Cadillac was registered to Thomasine Felder, Sellman's girlfriend, who also lived at 2612 Oswego Avenue.

Prior to trial, Sellman sought to suppress the evidence seized from the blue Cadillac. Sellman argued that the search warrant upon which the officers acted did not authorize them to search the blue Cadillac because the warrant identified the place to be searched as "a 1982 Plymouth, black 4-door [Maryland] tag BMT-002." During the suppression hearing, the Government introduced the three applications for the search warrants, an affidavit in support of the applications, and the three warrants issued by the magistrate judge. The district court found that the warrants for Sellman's person, his residence on Oswego Avenue, and the black Plymouth were supported by a single affidavit. The affidavit showed probable cause to believe that: Sellman habitually left 2612 Oswego Avenue in the morning; he drove a vehicle with Maryland license BMT-002; and he distributed cocaine and heroin to his street dealers at the shooting gallery. The district court determined that the officers did not unconstitutionally search the blue Cadillac and denied the suppression motion. The district court stated that Sellman's presence in a vehicle displaying the identical registration tag identified in the search warrant enabled the officers to

3

believe reasonably that they did not need a separate warrant for the blue Cadillac, and that the blue Cadillac was the appropriate place to search.

Sellman appeals the district court's ruling. The question of whether a district court properly denied a motion to suppress evidence because police obtained the evidence in violation of the Fourth Amendment is a mixed question of law and fact, which we review de novo.[3]

II.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized."[4] The requirement for particularity "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."[5] The particularity requirement is satisfied when an officer in possession of a search warrant describing a particular place to be searched can reasonably ascertain and identify the intended place to be searched.[6] Should the description of the place to be searched prove overbroad or mistaken, however, no Fourth Amendment violation occurs when the officers executing the search reasonably believe that the warrant is sufficiently particular and that they are searching the correct location.[7] An erroneous description or a factual mistake in the search warrant will not necessarily invalidate the warrant and the subsequent search.[8] The officers in the instant case executed the search warrant issued for the "1982 Plymouth, black 4-door, with Maryland license BMT-002" on the blue Cadillac bearing the identical registration tag. We must decide whether the intervening change in two of the vehicle's identifying characteristics, the color and model, between the last date the officers observed the

_____

[3] **United States v. Gastiaburo**, 16 F.3d 582, 585 (4th Cir. 1994).
[4] U.S. Const. amend. IV.
[5] **Maryland v. Garrison**, 480 U.S. 79, 84 (1987).
[6] **Steele v. United States**, 267 U.S. 498, 503 (1925).
[7] **Garrison**, 480 U.S. at 84-9.
[8] **United States v. Owens**, 848 F.2d 462, 463-66 (4th Cir. 1988).

4

Plymouth and date the magistrate signed the warrant, served to vitiate the search. We find the Supreme Court's decision in Maryland v. Garrison[9], and our decision in United States v. Owens[10], instructive in resolving the question before us.

In Garrison, the Court upheld the validity of a search conducted at the wrong apartment. The police officers applied for and were issued a warrant authorizing a search of a premises described as 2036 Park Heights Avenue, third floor apartment and for the resident of the apartment, Meril McWebb. Relying on utility company records, the officers reasonably believed that the third floor contained only one apartment and that it was occupied by McWebb. The police seized narcotics and drug paraphernalia from the apartment they were searching, but they soon realized they were in a second apartment located on the third floor, which belonged to a different person, Harold Garrison. Garrison was subsequently convicted for violating Maryland's Controlled Substances Act. The Court affirmed Garrison's conviction, noting that before the officers discovered the factual mistake, the officers reasonably believed they had been searching McWebb's apartment. The Court declared that a search warrant must be reviewed in light of the information available to the officers at the time they executed the search.[11]

In Owens, when officers went to execute a search warrant of an apartment, identified in the warrant as number 336 and said to be located on the third floor of an apartment building, they found that of the two apartments located on the third floor, only one was occupied and neither apartment was numbered 336. Because the affidavit clearly identified the apartment to be searched as one that was occupied, and an informant confirmed the officers' observations that it had to be the apartment on the right, the officers searched the apartment numbered 324. When Owens contested the validity of the search on the basis that the warrant authorized the search of apartment 336 and not 324, we held that:

_____

[9] 480 U.S. 79 (1987).
[10] 848 F.2d 462 (4th Cir. 1988).

[11] **Garrison**, 480 U.S. at 88.

5

> The officers had a reasonable and objective basis on which to conclude that the warrant authorized a search of apartment numbered 324. This determination was much more than a calculated guess and cannot be described as an effort to conduct a fishing expedition. The officers were justified in using common sense and reliable information known to them outside the four corners of the warrant and affidavit to assist in determining the place actually authorized to be searched. They were not prohibited from making a good faith interpretation of the warrant in light of the information available to them at the time they acted. . . .
>
> While the warrant here was facially deficient because an incorrect apartment number was given, the deficiency was corrected prior to the search by personal observations and information on which one could reasonably and in good faith make a determination of the actual place the warrant authorized to be searched.[12]

In the instant case, the application for the search warrant, the supporting affidavit, and the warrant itself identified the vehicle to be searched as a "1982 Plymouth, black 4 door, MD tag BMT-002." Unbeknownst to the officers applying for the search warrant, between the last date of their surveillance, January 12, and the date on which the magistrate judge signed the warrant, January 23, Sellman purchased the blue Cadillac because the Plymouth had been involved in an accident. Consequently, on January 31, when the officers began to execute the search, Grandy was surprised to see Sellman drive away from his residence in a blue Cadillac. Because the blue Cadillac displayed the identical registration number as the black Plymouth, the officers stopped the vehicle as planned and searched Sellman and the blue Cadillac.

We believe that the technical misdescription of the vehicle's color and make did not render the search of the Cadillac unconstitutional. The vehicle's registration number, the most visible factor used in the identification of a specific vehicle identified the blue Cadillac as the most reasonable place for the officers to search. Furthermore, the

_____

[12] **Owens**, 848 F.2d at 466 (internal quotations omitted).

6

facts that Sellman and his residence were listed on the same warrant, and that the affidavit indicated that Sellman transported drugs from his residence to the shooting gallery in a vehicle bearing the license BMT-002, supports our holding that the officers reasonably executed the search warrant "in light of the information available to them at the time they acted."[13] Accordingly, we find no error in the district court's denial of Sellman's motion to suppress the evidence seized from the blue Cadillac.

III.

For the foregoing reasons, Sellman's convictions and sentence are

AFFIRMED.

---

[13] **Owens**, 848 F.2d at 466 (quoting Garrison, 480 U.S. at 85).

7