**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                          No. 98-4206

BERNARD BOB,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-97-209)

Submitted: December 8, 1998

Decided: December 29, 1998

Before NIEMEYER and HAMILTON, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Theodore N. I. Tondrowski, Maureen L. White, Richmond, Virginia,
for Appellant. Helen F. Fahey, United States Attorney, S. David
Schiller, Assistant United States Attorney, Richmond, Virginia, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bernard Bob appeals his jury convictions and resulting sentence for possession with the intent to distribute cocaine, in violation of 21 U.S.C. § 841 (1994); possession of a controlled substance, in violation of 21 U.S.C. § 844 (1994); using and carrying a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C.A. § 924(c) (West 1994 & Supp. 1998); possession of a firearm and ammunition by a drug user, in violation of 18 U.S.C. § 922(g)(3) (1994); and possession of a sawed-off shotgun, in violation of 26 U.S.C. § 5861(d) (1994). Finding no error, we affirm.

Richmond police officers obtained a search warrant for a residence in Richmond, Virginia, based on information received from a confidential informant that Bob recently sold drugs there. Upon executing the warrant, the officers knocked on the front door and then entered the residence. On the first floor, the officers found several weapons, crack cocaine, marijuana, drug paraphernalia, a police scanner and personal items belonging to Bob, including a suitcase containing birthday cards addressed to Bob, other documents, mail, a coat, and keys for all rooms in the residence. On the second floor of the residence, the officers found heroin, drug paraphernalia, cash, and more personal items belonging to Bob. The police arrested Bob in the yard outside the house and brought him inside, where they found a cellular telephone, a pager, and cash on his person. While inside, Bob admitted to ownership of one of the weapons found and made statements indicating ownership of another weapon.

Bob asserts that the district court erred by denying his motion to suppress. Bob first claims that the search warrant violated the particularity clause of the Fourth Amendment because the premises to be searched was a multi-occupancy building, not a single family dwelling as the warrant stated. Bob claims that the police knew that the

2

building was a multi-occupancy building prior to submitting the affidavit for a search warrant to the magistrate.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The requirement for particularity "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." Maryland v. Garrison, 480 U.S. 79, 84 (1987). The particularity requirement is satisfied when an officer in possession of a search warrant describing a particular place to be searched can reasonably ascertain and identify the intended place to be searched. See United States v. Owens, 848 F.2d 462, 463 (4th Cir. 1988) (citing Steele v. United States, 267 U.S. 498, 503 (1925)). If the description of the place to be searched is over-broad or mistaken, there is no Fourth Amendment violation when the officers executing the search reasonably believe that the warrant is sufficiently particular and that they are searching the correct location. See Garrison, 480 U.S. at 84-89. An erroneous description or a factual mistake in the search warrant will not necessarily invalidate the warrant and the subsequent search. See Owens, 848 F.2d at 463-64.

At trial, Officer Scott, the officer who prepared the affidavit presented to the magistrate, testified that the informant gave information concerning multiple narcotics purchases from Bob at the residence searched. Also, the informant stated that Bob retrieved narcotics from both levels of the house. The informant did not advise the police that the house was subdivided into "apartments." Officer Scott also testified that he had known the informant for two years and found his information to be reliable.

Further, Officer Howard, the officer who executed the warrant, testified that no information existed prior to entry that the residence was not a single family residence to which Bob had full access and control. Upon entering the house, the police found multiple rooms. The room on the first floor contained no furniture and appeared to be a "shooting gallery," while the upstairs room appeared to be Bob's living quarters. Thus, the officers reasonably concluded that the warrant authorized a search of the entire residence.

3

Bob next asserts that the search was unreasonable because the officers violated the knock and announce rule. Bob claims that the officers did not wait long enough for a response before using force to enter the residence after announcing their presence. One element of the reasonableness inquiry governing the lawfulness of searches under the Fourth Amendment is that police officers must knock and announce their presence before entering the premises to be searched. See Wilson v. Arkansas, 514 U.S. 927, 934 (1995). Bob claims that the officers only waited five seconds before entering the residence. There is no rule providing that a specific amount of time must elapse before law enforcement officers may use force to enter a dwelling after announcing their presence. A reasonable time is ordinarily brief. See United States v. One Parcel of Real Property, 873 F.2d 7, 9 (1st Cir. 1989) (approving five to ten second delay).

Further, the principle is not a rigid rule and allows for an unannounced entry when there are important countervailing law enforcement interests such as the safety of the officers or prevention of the destruction of evidence. See Wilson, 514 U.S. at 936. Here, the officers had reason to believe that both drugs and weapons would be found in Bob's residence, raising both safety and loss of evidence concerns. Also, Bob was not inside the house but in the backyard, where he could not hear and respond to the officers' knocking.

Bob next asserts that his statements during the search were obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966). For Miranda warnings to be required, the incriminating statements must be made incident to a custodial interrogation. See Beckwith v. United States, 425 U.S. 341, 345-46 (1976).

Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda, 384 U.S. at 444. A person is in custody if he has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed of the degree associated with a formal arrest. See United States v. Leshuk, 65 F.3d 1105, 1108 (4th Cir. 1995). Whether a suspect is in custody depends upon the reasonable perception of a person in the suspect's position. See Berkemer v. McCarty, 468 U.S. 420, 442 (1984). Bob claims that he was in cus-

4

tody for <u>Miranda</u> purposes because he was being held in handcuffs by the police as they searched the residence. However, Bob fails to establish he was interrogated by police while detained. Interrogation under <u>Miranda</u> encompasses express questioning or its functional equivalent. <u>See Rhode Island v. Innis</u>, 446 U.S. 291, 300-01 (1980).

Officer Howard testified that Bob began making unsolicited statements once inside the residence. The record discloses that when a police officer picked up a sawed-off shotgun, Bob stated that the gun did not have a firing pin. Bob also stated that the first floor room was not his, and when the officer asked why his shotgun was there, Bob stated that it was for protection. Thus, we find that Bob was not interrogated by police officers while he was handcuffed but rather made spontaneous utterances that were admissible. <u>See United States v. Rhodes</u>, 779 F.2d 1019, 1032 (4th Cir. 1985).

Bob next asserts that the evidence was insufficient to support his convictions because he was neither in actual or constructive possession of the drugs and weapons. To sustain a conviction, the evidence viewed in the light most favorable to the Government must be sufficient for a rational jury to find the essential elements of the crime beyond a reasonable doubt. <u>See Glasser v. United States</u>, 315 U.S. 60, 80 (1942).

Constructive possession exists when the defendant exercises, or has the power to exercise, dominion and control over the item, <u>United States v. Laughman</u>, 618 F.2d 1067, 1077 (4th Cir. 1980), and has knowledge of the item's presence. <u>See United States v. Schocket</u>, 753 F.2d 336, 340 (4th Cir. 1985). "Knowledge may be inferred from possession, that is, dominion and control over the area where the contraband is found." <u>United States v. Lochan</u>, 674 F.2d 960, 966 (1st Cir. 1982). Furthermore, possession need not be exclusive, but may be shared by others, and is susceptible of proof by circumstantial as well as direct evidence. <u>See Laughman</u>, 618 F.2d at 1077.

The record discloses that there was only one lease for the residence and that Bob was responsible for the entire rent. Further, there was evidence at trial that Bob would answer the front door from either level of the house. Other evidence disclosed that Bob possessed keys to both levels of the residence and that his personal property was

5

found on both levels. Moreover, Bob's statements during the search establish that he exercised dominion and control over the weapons found in the residence and that he was involved in drugs. Thus, viewing the evidence in the light most favorable to the Government, we find the evidence sufficient to sustain Bob's convictions.

Finally Bob asserts that the court erred in increasing his offense level for perjury at trial. A two-level increase in offense level may be imposed under U.S. Sentencing Guidelines Manual § 3C1.1 (1997) ("USSG"), "[i]f the defendant willfully obstructed or impeded . . . the administration of justice during the investigation, prosecution, or sentencing of the instant offense . . . ." Perjury is conduct that warrants the enhancement. See USSG § 3C1.1, comment. (n.3(b)). An enhancement for perjury is sufficient if the court's finding "encompasses all of the factual predicates for a finding of perjury." United States v. Dunnigan, 507 U.S. 87, 95 (1993). A defendant commits perjury if he under oath or affirmation "gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." Id. at 94. The court found that Bob denied ownership of the drugs and weapons in contradiction to previous statements and evidence at trial.

This court gives due regard to the opportunity of the district court to judge the credibility of witnesses and accepts the district court's findings of fact unless they are clearly erroneous. See United States v. Uwaeme, 975 F.2d 1016, 1018 (4th Cir. 1992). We conclude that the court did not clearly err in finding Bob committed perjury and in imposing the sentencing enhancement for obstruction of justice.

Accordingly, we affirm Bob's convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED