# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

Nos. 04-1261 & 04-1605

MARK D. JONES and
THERESA A. JONES,

*Plaintiffs-Appellees,*
*Cross-Appellants,*

*v.*

RON WILHELM,

*Defendant-Appellant,*
*Cross-Appellee.*

———————

Appeals from the United States District Court
for the Western District of Wisconsin.
No. 03-C-25—**Barbara B. Crabb**, *Chief Judge.*

———————

ARGUED SEPTEMBER 24, 2004—DECIDED OCTOBER 3, 2005

———————

Before FLAUM, *Chief Judge*, and RIPPLE and WILLIAMS,
*Circuit Judges.*

WILLIAMS, *Circuit Judge.* While executing a search
warrant, Detective Ron Wilhelm and his team of officers
mistakenly entered the apartment of Mark and Theresa
Jones. Mr. and Mrs. Jones sued Detective Wilhelm pursu-
ant to 42 U.S.C. § 1983 alleging a violation of their Fourth
Amendment right to be free of unreasonable searches and
seizures. In particular, the Joneses claimed that Wilhelm
failed to take reasonable steps to discern the proper target

of the warrant before execution of the warrant ("the war-
rant claim") and failed to give them sufficient time to
answer their door before entering ("the knock-and-announce
claim").

On the knock-and-announce claim, the district court
denied Wilhelm's motion for summary judgment. We affirm
the district court's denial of summary judgment because the
alleged facts taken in a light most favorable to the Joneses
indicate a violation of their clearly established rights. On
the warrant claim, the district court granted summary
judgment in favor of Wilhelm on qualified immunity
grounds. We find, however, that Wilhelm violated the
Joneses' clearly established rights where he (1) executed a
validly issued warrant he knew to be facially ambiguous;
and (2) circumvented the magistrate judge and resolved the
warrant's ambiguity on his own. Therefore, we reverse the
district court's grant of summary judgment in favor of
Wilhelm on qualified immunity grounds.

In addition, in evaluating the Joneses' warrant claim, we
find that the pleadings, depositions, answers to interrogato-
ries, and admissions on file, together with any affidavits,
show that there are no genuine issues of fact regarding
Wilhelm's deprivation of the Joneses' rights as secured
by the Constitution or Wilhelm's status as a person acting
under color of state law. Thus, we grant summary judgment
in favor of the Joneses on their warrant claim.

## I.  BACKGROUND

Mr. and Mrs. Jones live at 220 W. Burnett Avenue in
Grantsburg, Wisconsin. The building at 220 W. Burnett
Avenue contains two apartments on the lower level and two
on the upper level. The upstairs apartments are labeled
"#1" and "#2." Apartment #1 is on the north side, and
apartment #2 is on the south side. At the time of the search
that led to this suit, the Joneses resided in apartment #1,

and Jody Gruenwald-Anderson occupied apartment #2. There are two entrances to 220 W. Burnett Avenue, one in the front (west) and one in the back (east). Each entrance offers a staircase leading to the second floor. Someone who uses the front door and accompanying staircase faces east both when entering the building and when reaching the second floor. Conversely, parties using the rear door faces west both when entering the building and upon alighting at the top of the stairs.

Early in 2002 Wilhelm received a tip from Valerie Kauffman, who lived on the first floor of 220 W. Burnett Avenue, regarding drug activity in the building. Kauffman alleged that some upstairs residents were involved in drugs, but she did not specify which of the two upstairs apartments they occupied. In support of her claim, Kauffman told Wilhelm he should "just watch the [pedestrian] traffic, you will see a lot of activity in this building." In response, Wilhelm performed surveillance on the building for approximately ten nights. During his surveillance, Wilhelm observed visitors enter the building from both entrances. Wilhelm could also see "shadows" moving in apartment #1, but he could not see into apartment #2, as its windows were covered with blankets.

The parties dispute what Wilhelm actually saw during his surveillance. Wilhelm testified in his deposition that he saw numerous people use the back door, while only a few used the front door. Furthermore, he stated that every time someone entered through the back door at night, he would observe activity in apartment #1. He also acknowledged that this activity may have been non-drug related. Mr. Jones contends that Wilhelm could have made no such observations, as only a neighbor for whom Jones provided child care and the neighbor's child ever used the back door, which offered no working doorbells and was regularly kept locked.

Some time after Wilhelm's surveillance, Detective Tracy Finch received a tip from a confidential informant indicating that Jody Gruenwald-Anderson of 220 W. Burnett Avenue was manufacturing methamphetamine. The informant described Gruenwald-Anderson's apartment as being on the second floor on the right. Detective Finch obtained a warrant to search the apartment in question, but the warrant did not list Gruenwald-Anderson's name. Instead, it instructed officers to search "the upstairs apartment on the right" at 220 W. Burnett Avenue.

Finch then provided the warrant to Wilhelm for Wilhelm to execute and gave him the name of the target; Wilhelm would later recall it as either "Jody Gruenwald" or "Jody Anderson." Wilhelm then assembled a group of officers to execute the warrant and met the officers at the Grantsburg Village Police Department before driving to the apartment building to execute the warrant. After leaving the police department, but before arriving at the apartment building, Wilhelm realized that the building described in the search was the same building he had previously surveilled. Based on his earlier surveillance, Wilhelm was aware there were two staircases facing opposite directions in the building, and, he realized that the warrant was unclear where it directed the team to the "upstairs apartment on the right."

Wilhelm, however, clarified the warrant himself by reaching two conclusions. First, Wilhelm concluded that the activity he had observed in apartment #1 which corresponded to the pedestrian traffic at the back door at night corroborated Kauffman's allegation that there was a lot of drug activity in the building. By Wilhelm's logic, only the alleged drug lab could have caused the increased nightly traffic at the building's back door, and because all of the nightly traffic coincided with activity in apartment #1, apartment #1 was the most likely location for the lab. Second, Wilhelm reasoned that since most people used the building's rear entrance regardless of their intentions, the

informant's reference to an upstairs apartment "on the right" probably meant on the right as viewed from the top of the rear stairs. This conclusion also pointed Wilhelm toward apartment #1, the Joneses' home.

Armed with these assumptions, Wilhelm arrived at the building to execute the warrant. Notwithstanding his determination that the warrant was directed to the back door, Wilhelm opted to enter 220 W. Burnett Avenue through the front door. Just inside the front door were doorbells with names and apartment numbers on them. It is undisputed that Gruenwald-Anderson's bell bore her name and the number of her apartment at that time. Wilhelm, however, did not read the labels on the doorbells because he was certain that he had targeted the correct apartment.

In his deposition, Wilhelm testified that the team followed standard operating procedure during the raid. After he went in the front door, Wilhelm led his team to the first set of stairs. Once at the top of the stairs, the team went to apartment #1, which was on the *left,* but would have been on the right if the team had used the back entrance and stairs. On Wilhelm's order, a member of the team, Deputy Steven Sacharski, knocked, called out "police, search warrant," and kicked in the door. Each member of the team, however, gives a different time sequence for these operations:

- According to Wilhelm, Sacharski knocked, waited ten to fifteen seconds, announced, waited a few more seconds, and then entered.

- Deputy Ryan Bybee testified that Sacharski knocked and announced, waited five seconds, and then entered.

- According to Officer Dan Wald, there was a knock, a pause of two to three seconds, and then an announcement. He could not remember how

long the officers waited after announcing before they entered.

- Sacharski himself testified that he knocked, waited ten to fifteen seconds, announced, waited "a couple seconds or so," and then entered.

In summary, the officers' statements indicate that Sacharski (1) knocked, (2) waited between two to eighteen seconds, (3) announced, (4) waited another two seconds, and (5) entered.

In contrast, Mr. Jones testified in his deposition that after hearing a knock at approximately 9:20 P.M. he immediately got up and "stormed towards the door," but only managed to take eight steps before the police entered. As Jones recalled the situation, the announcement started before the police entered, but "by the time the word warrant came out, the door flew open." Jones gave the time between the start of the announcement and the officers' entry as "[m]ere seconds," responding affirmatively when asked if this could mean three to five seconds.

Once inside, the officers pressed Mr. Jones to the ground and handcuffed him. The officers also awakened Mrs. Jones, who was asleep in bed in the other room, and handcuffed her. Once Wilhelm saw Mrs. Jones, he recognized her and realized he was in the wrong apartment. He ordered the handcuffs removed, apologized to the Joneses, and led his team across the hall, where they forcibly entered apartment #2.

In the aftermath of the raid, the Joneses asserted multiple § 1983 claims, two of which are before us. First, in their warrant claim, they allege that Wilhelm failed to take "basic and obvious steps" to ascertain the proper target of the warrant before entering their apartment. Second, in their knock-and-announce claim, they allege that Wilhelm failed to wait sufficiently long after announcing his presence before forcibly entering their home. These actions, they

contend, violated their Fourth Amendment rights.

Both parties moved for summary judgment on the warrant claim. Only Wilhelm moved for summary judgment on the knock-and-announce claim. The district court granted summary judgment in favor of Wilhelm on the warrant claim on qualified immunity grounds and denied Wilhelm's motion for summary judgment on the knock-and-announce claim. Wilhelm appeals the district court's denial of his motion for summary judgment on the knock-and-announce claim. The Joneses appeal both the grant of summary judgment in favor of Wilhelm on the warrant claim and the denial of their own motion for summary judgment on the same claim.

## II. ANALYSIS

### A. Qualified Immunity

The doctrine of qualified immunity shields government officials against suits arising out of their exercise of discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). In particular, this doctrine applies to police officers executing a search warrant, who may claim qualified immunity in suits challenging the constitutionality of their actions. *Jacobs v. City of Chicago*, 215 F.3d 758, 767 (7th Cir. 2000).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court set out a two-part test for qualified immunity. First, a court must decide whether the facts, when viewed in the light most favorable to the plaintiff, indicate that the officer's conduct violated some constitutional right of the plaintiff. 533 U.S. at 201. Second, if the answer to the first question is "yes," then the court must determine whether the constitutional right violated was "clearly

established" at the time of the alleged violation. *Id.* The officer will enjoy qualified immunity unless the court affirmatively answers *both* questions. *Id.*

Wilhelm urges us to append a third prong to the two-part *Saucier* test, contending that "[e]ven if the Court finds that there was clearly established law which was violated, the immunity question should be decided based on whether police officers acted reasonably under the circumstances they faced." (Appellant's Reply Br. at 10.)

*Saucier* clearly states, however, that "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202; *accord Payne v. Pauley*, 337 F.3d 767, 775-76 (7th Cir. 2003). It goes without saying that the reasonableness of an official's actions is not a factor in determining whether the facts as alleged constitute a violation of constitutional rights. Neither is the reasonableness of an official's actions an independent factor in determining whether a right is clearly established, as an official is held to have violated a clearly established right only where a reasonable officer would have known the alleged actions to be illegal, if faced with similar circumstances. *Saucier*, 533 U.S. at 202; *Anderson*, 483 U.S. at 640 (explaining that a particular right is clearly established, even where no court has declared the defendant's precise alleged activity illegal, so long as pre-existing law made the activity's illegality "apparent," with "[t]he contours of the right . . . sufficiently clear that a reasonable official would understand that what he is doing violates that right."); *see also Siebert v. Severino*, 256 F.3d 648, 654-55 (7th Cir. 2001) ("A violation may be clearly established if the violation is so obvious that a reasonable state actor would know that what [he is] doing violates the Constitution, or if a closely analogous case establishes that the conduct is unconstitutional.").

Thus, following *Saucier*, we reaffirm that the proper standard for qualified immunity remains a two-part test which first examines whether the defendant's alleged actions constitute a violation of constitutional rights, and then determines whether the implicated right was clearly established at the time. *See, e.g.*, *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 353 (7th Cir. 2005); *Leaf v. Shelnutt*, 400 F.3d 1070, 1080 (7th Cir. 2005); *Tun v. Whitticker*, 398 F.3d 899, 901-02 (7th Cir. 2005); *Velez v. Johnson*, 395 F.3d 732, 735 (7th Cir. 2005); *Board v. Farnham*, 394 F.3d 469, 476-77 (7th Cir. 2005).

In the alternative, Wilhelm asks that when we determine whether it would have been clear to a reasonable officer that Wilhelm's actions violated the Joneses' constitutional rights, we impute to the hypothetical, reasonable officer only Wilhelm's actual knowledge, and not the knowledge he ought reasonably to have amassed during the execution of the warrant. Such an interpretation, however, would enable state agents to trample on the constitutional rights of citizens by maintaining willful ignorance of what reasonable officers should have known, and we refuse to take such a step. In determining whether a defendant's alleged actions violated a clearly established right, courts may properly take into account any information the defendant ought reasonably to have obtained. *See Pounds v. Griepenstroh*, 970 F.2d 338, 340 (7th Cir. 1992).

B. The Warrant Claim

We review rulings on motions for summary judgment *de novo*. *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). It is undisputed in this case that in 2002 the Joneses had a right to be free from unreasonable searches and seizures and had a right to be the subject of a warrant only when the warrant was supported by probable cause and particularly described the place and people to be searched.

U.S. CONST. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized."). The focus of this appeal, therefore, is whether the actions as alleged by the Joneses constitute a violation of their clearly established rights.

In evaluating an alleged violation of the Warrant Clause of the Fourth Amendment, it is helpful to distinguish between the two distinct phases of a search warrant: the issuance of the search warrant and the execution of the search warrant. As to the issuance of a search warrant, the Fourth Amendment requires that a warrant be supported by probable cause and particularly describes the place to be searched. Before an officer may undertake a search, the Fourth Amendment "require[s] the judgment of a magistrate on the probable-cause issue and the issuance of a warrant." *Chambers v. Mahoney*, 399 U.S. 42, 51 (1970); *see also Illinois v. Gates*, 462 U.S. 213, 239 (1983) ("Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others."). While magistrates do not possess sole discretion to make probable-cause determinations, "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." *Id.*

In addition, "[t]he Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.'" *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *Jacobs*, 215 F.3d at 767. "The uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitu-

tional." *Massachusetts v. Sheppard*, 468 U.S. 981, 988 n. 5 (1984). Absent exigent circumstances, nothing—neither the determination of probable cause nor the confirmation that a warrant is sufficiently particular—is meant to be left to the discretion of police officers executing a warrant. *United States v. Brown*, 832 F.2d 991, 996 (7th Cir. 1987) (citing *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).

Here, we find that the warrant was valid when it was issued despite the lack of diligence displayed by the police force in failing to ensure that Gruenwald-Anderson's name and apartment number appeared on the warrant and despite the fact that the scope of the warrant turned out to be ambiguous. *See Garrison*, 480 U.S. at 85-86 (finding warrant valid when issued despite the fact that the scope of the warrant turned out to be ambiguous); *U.S. v. White*, 416 F.3d 634, 638 (7th Cir. 2005) (finding a search warrant described with sufficient particularity the premises to be searched where the police conducted a reasonable investigation, which did not suggest that the house actually contained more than one unit, notwithstanding that ultimately the house targeted was not a single family residence as described in the warrant but actually a multi-unit, multi-purpose building).

Turning then to the execution of the warrant, we find that Wilhelm's conduct in executing the warrant violated the Joneses' clearly established Fourth Amendment rights. The warrant here instructed officers to search "the upstairs apartment on the right" at 220 W. Burnett Avenue. It is undisputed that, upon being assigned to execute the search warrant, Wilhelm recognized the address from his earlier surveillance and knew immediately that the building contained two staircases. (Appellant Opening Br. at 12-13; Appellant Reply Br. at 3.) Based on this prior knowledge, Wilhelm knew that if he took the back staircase, then the "upstairs apartment on the right" would lead him to the Joneses' apartment, and, in the alternative, if he took the

front staircase, then the warrant would lead him to Gruenwald-Anderson's apartment. *Id.* By his own admission, therefore, Wilhelm knew before he executed the warrant that the phrase "upstairs apartment on the right" would lead him to a different apartment depending on which staircase taken. Where a warrant is open to more than one interpretation, the warrant is ambiguous and invalid on its face and, therefore, cannot be legally executed by a person who knows the warrant to be ambiguous. *Garrison*, 480 U.S. at 86-87.

We must emphasize that the Joneses' clearly-established rights were not violated because the warrant turned out to be ambiguous. Rather, the Joneses' rights were violated because Wilhelm knew the warrant did not particularly describe the place to be searched based on his prior surveillance of the building.[1] Wilhelm recognized the warrant as ambiguous before the execution of the warrant, but failed to immediately stop execution and seek the necessary clarification of a warrant in order to make certain the warrant particularly described the place to be search as

---

[1] The dissent acknowledges that Wilhelm was aware of the layout of the building and allegations of illegal drug activity on its second floor *prior to* executing the warrant. The dissent also acknowledges that Wilhelm targeted "the Joneses' apartment based on his own observations of traffic in and out of the building followed by activity in plaintiffs' apartment." Despite these acknowledgments, the dissent concludes that "[f]rom Wilhelm's perspective, the warrant was not ambiguous." If Wilhelm knew the layout of the building, then he had to recognize that the warrant's direction to search the "upstairs apartment on the right" was ambiguous immediately upon reading the warrant. In other words, to acknowledge that Wilhelm used his beliefs to determine the target of the warrant is to acknowledge that the warrant was ambiguous on its face. Otherwise, if the warrant specifically targeted the Joneses' apartment, then Wilhelm would have no need to leverage his personal observations.

called for by the Fourth Amendment. *Garrison*, 480 U.S. at 87 (forbidding the execution of a search warrant a police officer knows to be ambiguous).

In this situation, the Fourth Amendment prohibits Wilhelm from applying his earlier surveillance and subsequent deductions to resolve the warrant's ambiguity rather than presenting those observations to a magistrate for determination.[2] It is undisputed that based on observations Wilhelm made during his surveillance of 220 W. Burnett Avenue, he concluded that Detective Finch's informant was more likely to have used the rear door and thus to have described apartment #1, not apartment #2, as being "on the right." This determination of which apartment was more likely to contain contraband, thereby meriting a constitutionally acceptable search, constitutes an evaluation of probable cause that the Fourth Amendment requires be left to the magistrate absent exigent circumstances. *Chambers,* 399 U.S. at 51.

   1.   The good faith exception does not apply.

We recognize that an erroneous description in a warrant does not necessarily invalidate the subsequent execution of a warrant search. *See, e.g., U.S. v. Stefonek*, 179 F.3d 1030, 1033 (7th Cir. 1999) (finding that the failure of a search

---

[2] The dissent allows Wilhelm the discretion to use his prior surveillance in order to determine the proper target for the execution of the warrant, concluding that Wilhelm had a good-faith basis to target the Joneses' apartment. Nothing in the precedent of the Supreme Court or this circuit, however, affords an officer any discretion to interpret a warrant. Clearly established federal law states that, absent exigent circumstances, nothing is meant to be left to the discretion of police officers executing a warrant. *Brown*, 832 F.2d at 996 (citing *Stanford v. Texas*, 379 U.S. 476, 485 (1965)).

warrant to particularly describe things to be seized, in violation of the Fourth Amendment, did not require suppression of evidence seized where the search conformed to the particular description contained in the affidavit). Even if a warrant is ultimately found to be unsupported by probable cause or lacking in particularity, searches conducted pursuant to the warrant may be valid under the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897, 926 (1984). For a warrant search to qualify for the good-faith exception, however, the officers conducting the search must have manifested an objective good-faith belief in the validity of the warrant. *Leon*, 468 U.S. at 926. Execution of search warrants, therefore, should be examined in light of "the need to allow some latitude for honest mistakes that are made by officers in [this] dangerous and difficult process." *Garrison*, 480 U.S. at 87.

Wilhelm had prior knowledge of the building's layout before executing the warrant. As a result, he does not qualify for any good-faith exception. Where an officer executing a warrant knows or should have known that a warrant, which was valid when issued, now lacks the necessary particularity, then that officer cannot legally execute the warrant.[3] *Id.* at 86. Furthermore, if an officer obtains information while executing a warrant that puts him on notice of a risk that he could be targeting the wrong location, then the officer must terminate his search. *Id.* at 87; *Jacobs*, 215 F.3d at 769 (holding that while executing a

---

[3]  As we discussed, Wilhelm knew from his prior surveillance that the warrant was not sufficiently particular to target the Joneses' apartment, and, therefore, he could not lawfully execute the warrant there. Yet the dissent reasons that it was Wilhelm's prior surveillance that provided him with a good-faith basis to target the Joneses' apartment. His prior surveillance, however, is the precise reason he lacks good faith—Wilhelm knew from his prior observations that the warrant on its face was ambiguous.

warrant, "[a]t the moment the Defendant Officers discovered the defect in the description of the place to be searched, they were obligated to cease that search if they could not determine which apartment was properly the subject of the warrant.").

In support of his contention that his actions in executing the warrant did not constitute a violation of the Joneses' clearly established rights, Wilhelm cites the Fourth Circuit's decision in *United States v. Owens*, 848 F.2d 462, 463 (4th Cir. 1988) for the proposition that a reasonable officer may augment a warrant with his own personal knowledge in order to resolve an ambiguity.

In *Owens*, officers acted upon a warrant authorizing them to search an occupied apartment on the third floor of a named building, only to discover that there were two separate apartments on that floor. *Owens*, 848 F.2d at 465. As one of the apartments was vacant, however, they searched the other one, noting the affidavit's description of an occupied apartment. *Id.* at 463, 465. While officers executing a warrant must generally suspend their search if they discover information that renders the warrant ambiguous, *Garrison*, 480 U.S. at 87, the Fourth Circuit upheld the officers' actions in *Owens*, as the affidavit supporting the warrant clearly identified the apartment to be searched as one that was occupied, and no other apartment fit that description. *Owens*, 848 F.2d at 465.

In this case, Wilhelm knew *before* he began executing the warrant that the warrant was ambiguous on its face. In addition, there is no evidence in this case that the affidavit in support of the warrant targeted the Joneses' apartment. Instead, the evidence establishes that the description given in both the warrant and the affidavit fit the description of two separate apartments. Therefore, *Owens* does not apply to this case because the key facts in *Owens* were that the affidavit supporting the warrant specifically targeted an

occupied apartment, and no other apartment fit the description given in the affidavit.

Here, a reasonable officer possessing the knowledge Wilhelm possessed would have discovered the fatal defect in the warrant prior to arrival to the building. Even without Wilhelm's specialized knowledge, a reasonable officer would have discovered the fatal defect in the warrant upon entering the building and discovering two sets of staircases facing opposite directions. In light of this, we cannot conclude that the search was a valid execution of that warrant as neither the warrant nor the affidavit in support of the warrant targeted the Joneses' apartment. *See Jacobs*, 215 F.3d at 769 (finding that, where the search of the plaintiffs' apartment occurred after it appeared from the allegations in the complaint that a reasonable officer would have discovered a fatal defect in the warrant, the search was not a valid execution of that warrant). In order to target the Joneses' apartment, Wilhelm circumvented the proper procedural safeguards and acted as his own magistrate to issue his own personal amended warrant by applying knowledge he had gained before that night to resolve the warrant's ambiguity.

For all the reasons discussed, we find that the undisputed facts of this case establish that Wilhelm's actions violated the Joneses' clearly established rights because he (1) executed a validly issued warrant he knew to be facially ambiguous prior to the execution of the warrant; and (2) circumvented the magistrate judge and resolved the warrant's ambiguity based on information he should have disclosed to the magistrate who issued the warrant. Since Wilhelm's undisputed actions represent a violation of clearly-established, constitutional rights, we find that Wilhelm enjoys no qualified immunity as to the Joneses' warrant claim.

2. Summary judgment on the warrant claim in favor of the Joneses is appropriate.

Having determined that Wilhelm is not entitled to qualified immunity, we now turn to the district court's denial of the Joneses' motion for summary judgment on their warrant claim. To state a claim for relief under 42 U.S.C. § 1983, the Joneses must allege: (1) they were deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was visited upon them by a person or persons acting under color of state law. *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (citations omitted). As the second element is undisputed, the question is whether the Joneses have produced evidence such that a reasonable jury could find that Wilhelm deprived them of a right secured by the Constitution or federal law. In analyzing whether a question of fact exists, we construe the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a genuine issue of material fact for the case to survive. *Id.* at 247-48.

Reviewing the facts in the light most favorable to Wilhelm, we find that there are no genuine issues as to any material fact and that the Joneses are entitled to a judgment as a matter of law. Notwithstanding the disputed issues of fact concerning both Wilhelm's knowledge of 220 W. Burnett Avenue and his actions during the execution of the flawed search warrant, Wilhelm's actions *prior* to the execution of the warrant are undisputed and provide a sufficient basis to grant summary judgment.

Prior to the execution of the warrant, the key facts in this case are: Wilhelm undertook surveillance and gained knowledge of 220 W. Burnett Avenue independent from the issuance of the search warrant; and, upon receipt of the

search warrant to execute, Wilhelm recognized the address and immediately realized the warrant to be ambiguous on its face. Both of these facts are undisputed in the record.

Wilhelm's decision then to proceed with the execution of a search warrant he knew to be ambiguous violated the Joneses' Fourth Amendment rights. *Garrison*, 480 U.S. at 89 (holding that officers cannot legally execute a warrant they know to be ambiguous). Furthermore, where Wilhelm made his own probable cause determination to resolve the warrant's ambiguity, Wilhelm also deprived the Joneses of a right secured by the Constitution. *Chambers,* 399 U.S. at 51. It follows, therefore, that the factual disputes, argued at length by both sides, regarding the full extent of Wilhelm's knowledge as a result of his surveillance and regarding the reasonableness of Wilhelm's actions while executing the search warrant are not material.

The pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of fact regarding Wilhelm's deprivation of the Joneses' rights as secured by the Constitution or Wilhelm's status as a person acting under color of state law. We, therefore, grant summary judgment on the warrant claim in favor of the Joneses.

C.  The Knock-and-Announce Claim

Wilhelm appeals the district court's denial of his motion for summary judgment on the Joneses' knock-and-announce claim, claiming that he is entitled to summary judgment on qualified immunity grounds. In general, 28 U.S.C. § 1291 does not confer jurisdiction to review a district court's denial of summary judgment. *Pac. Union Conf. of Seventh-Day Adventists v. Marshall*, 434 U.S. 1305, 1306 (1977). However, an exception to this rule comes into play when a movant requests summary judgment based on qualified

immunity. As qualified immunity protects officers not only against liability but also against the requirement to answer claims in court, such immunity "is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). A motion for summary judgment, therefore, represents a defendant's final opportunity to secure the full benefit of qualified immunity, and we may, therefore, review its denial. *Id.* at 530. In reviewing the district court's decision to deny Wilhelm summary judgment, however, we may not disturb that court's determination that particular factual issues are in dispute. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995).

It is undisputed in this case that in 2002 "the Fourth Amendment's proscription of unreasonable searches and seizures incorporated the requirement that law enforcement officers entering a dwelling with a search warrant must knock on the door and announce their identity and intention before attempting forcible entry." *United States v. Espinoza*, 256 F.3d 718, 723 (7th Cir. 2001). After knocking and announcing, officers may enter if the residents refuse to admit them, 18 U.S.C. § 3109 (2005) ("[An] officer may break open any outer or inner door or window of a house . . . to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance . . . ."), and officers may also *infer* refusal from circumstantial evidence. *United States v. Jones*, 208 F.3d 603, 610 (7th Cir. 2000). This knock-and-announce requirement serves to protect residents' ability to comply with the law by peaceably permitting officers to enter their dwelling, to avoid the destruction of property that can accompany forcible entry, and to prepare themselves for entry by law enforcement officers by, for example, pulling on clothes or getting out of bed. *Espinoza*, 256 F.3d at 723.

Certain exigent circumstances, however, can excuse an entry that would otherwise violate § 3109. *United States v. Soria*, 965 F.2d 436, 439 (7th Cir. 1992). Examples of

exigent circumstances include a particularized risk to the officers executing a warrant, *United States v. Singer*, 943 F.2d 758, 762 (7th Cir. 1991), and the risk that occupants will destroy evidence while officers wait outside, *United States v. Barrientos*, 758 F.2d 1152, 1159 (7th Cir. 1985). However, the mere fact that officers are conducting a drug raid does not, without more, imply the presence of either of these exigent circumstances. *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997) (acknowledging that the execution of a search warrant on a suspected drug operation is inherently dangerous, but striking down a *per se* rule excluding drug raids from the knock-and-announce requirement). Still, even absent a clear exigent circumstance, silence in response to a knock and announcement at a drug raid can support an inference of an emergent exigent circumstance, such as an effort to destroy evidence. *See United States v. Markling*, 7 F.3d 1309, 1318 (7th Cir. 1993) (approving a seven-second pause between announcement and entry when the resident failed to respond and the police had received a specific tip that he was likely to flush his cocaine if he heard officers approaching).

Thus, consistent with the Fourth Amendment's proscriptions, officers executing a search warrant on a suspected drug operation have a choice: the officers may enter a dwelling as soon as they reasonably infer *either* that the occupants intend to refuse them entry *or* that the occupants will destroy evidence if they wait longer. *See United States v. Banks*, 540 U.S. 31, 39-40 (2003). The time officers must wait after announcing before they may infer either a refusal to allow entry or a hazard to evidence must be determined by what is reasonable given the facts of the particular case. *Jones*, 208 F.3d at 610.

In their knock-and-announce claim, the Joneses allege that Wilhelm and his team violated their Fourth Amendment rights by failing to wait a reasonable time after knocking and announcing their identity before kicking in

their door. The evidence in this case, taken in the light most favorable to the Joneses, establishes that Wilhelm and his team waited only two seconds after they knocked before they kicked in the Joneses' door, with the announcement of their identity and intention coming somewhere within those two seconds. There is no evidence in this case establishing that Wilhelm reasonably inferred that the occupants were likely to destroy the suspected methamphetamine lab within two seconds. *Cf. United States v. Spinelli*, 848 F.2d 26, 30 (2d Cir. 1988) (excusing officers' rapid entry based on their justifiable fear that the target of the warrant would attempt to ignite a methamphetamine lab). Likewise, a two-second period of silence in response to a nighttime knock cannot on its own support a reasonable inference that the residents intended to refuse to admit the officers. Wilhelm raises three main arguments in support of his qualified immunity claim, which we shall address in turn. First, he asserts that the alleged knock-and-announce violation should be excused on the basis of exigent circumstances inherent in executing a search warrant at night on a suspected drug operation. The exigent circumstance exception is not a mere rule of pleading but a considered policy serving to maximize officers' safety and effectiveness in exceptional situations. It is for the officers on the scene, not their lawyers after the fact, to find exigent circumstances. Here, nothing in the warrant suggested or predicted a particular risk of violence or destruction of evidence. Indeed, Detective Finch stated in deposition testimony that the law enforcement agencies of Burnett County would normally issue no-knock warrants "if there's a possibility of weapons in the residence or someone has an extremely violent past or if there is a good possibility of destruction of evidence in a short period of time" (Finch Dep. 14), and the magistrate in this case issued no such warrant. Further, just as the warrant gave the officers no reason to anticipate exigent circumstances, the brief period they waited before kicking in the door does not support a

reasonable inference that exigent circumstances were developing contemporaneously. Finally, the deposition testimony of the officers involved belies Wilhelm's argument, as the officers testified that they followed standard operating procedure during the raid, with no indication of any exigent circumstance. Viewing the facts in the light favoring the Joneses, we find no evidence that Wilhelm reasonably perceived any exigent circumstances either before or during the raid.

In his second argument, Wilhelm urges us to follow *Molina v. Cooper*, 325 F.3d 963 (7th Cir. 2003), where we held that an officer's forcible entry during a warrant search complied with the knock-and-announce rule. *Molina*, 325 F.3d at 972. Wilhelm's reliance on *Molina,* however*,* is misplaced. In *Molina*, the target of the warrant had a criminal history, *id.* at 966 n.1, unlike the targets of Wilhelm's search, and the warrant for Molina's house alleged that Molina kept a stash of weapons and maintained an association with a gang. *Id.* Based on these facts, the police in *Molina* anticipated a "high risk" raid and took special precautions when executing the warrant. *Id.* at 966. When they reached Molina's home, they knocked and called out three successive times, waited an additional five seconds, and then burst in. *Id.* at 967. Viewed in the light most favorable to the Joneses, the facts of this case indicate that Wilhelm waited less time after announcing his presence before forcibly entering than did the officers in *Molina*, despite the fact that he had less reason to anticipate trouble. Therefore, *Molina* does not control here.[4]

---

[4]   In the alternative, Wilhelm argues that the very existence of a case such as *Molina*, which refuses to set a bright-line test for knock-and-announce timing, refutes the proposition that the right he allegedly violated was clearly established. This argument misstates the law. A rule need not be set out in bright-line terms

(continued...)

Third, Wilhelm argues that his premature entry was of no consequence because if Mr. Jones had not let the officers in, then they would have been able to infer a refusal to admit them, and everything would have proceeded the same way. If, in the alternative, Jones had indeed opened the door for the officers, then they still would have handcuffed him and his wife and pressed them to the floor until they could determine that the apartment was secure. So, according to Wilhelm, his alleged violation of the knock-and-announce rule did not cause the Joneses any incremental trauma.

Wilhelm's argument is wholly unrelated to whether he is entitled to qualified immunity. Rather, if anything, his argument goes to damages. A forcible entry that violates the knock-and-announce rule infringes upon a clearly-established, constitutional right regardless of any destruction of property or infliction of emotional distress. The officers effecting such an entry cannot recapture their lost immunity by attacking the magnitude of the injury. Such arguments are properly reserved for trial, not summary judgment.

We find, therefore, that the district court properly denied Wilhelm's motion for summary judgment on the knock-and-announce claim as the alleged facts taken in a light most favorable to the Joneses indicate a violation of a clearly established right.

## III.  CONCLUSION

---

[4] (...continued)
to provide reasonable officers enough information to know what is and is not legal in a given situation. As long as the unlawfulness is "apparent" in light of pre-existing law, the plaintiffs will have met their burden with regard to clear establishment. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

For all the foregoing reasons, we REVERSE the district court's grant of summary judgment in favor of Wilhelm on the Joneses' warrant claim, GRANT summary judgment in favor of the Joneses on their warrant claim, AFFIRM the district court's denial of summary judgment on the Joneses' knock-and-announce claim, and REMAND for further proceedings.

FLAUM, *Chief Judge*, concurring in part and dissenting in part. I agree with the majority's decision to affirm the district court's denial of summary judgment on the knock-and-announce claim. Considering the evidence in the light most favorable to plaintiffs, the officers may not have waited a requisite amount of time before breaking down the Joneses' door. Under Officer Wilhelm's version of events, however, the time between the knock and announcement and the officers' entry would have been sufficient to infer that plaintiffs had refused to allow the police to enter. Because there remains a substantial factual dispute about the critical issue of timing, I agree that plaintiffs should be permitted to go to trial on this claim.

I respectfully disagree, however, with the majority's decision to grant summary judgment to plaintiffs on the warrant claim. While the police work in this case was not exemplary, I do not believe that Officer Wilhelm was on notice that his execution of the warrant was unlawful such that he should be stripped of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable

officer that his conduct was unlawful *in the situation he confronted*.") (emphasis added).

Although the warrant would not have told a reasonable officer unfamiliar with the building which apartment it referred to, Officer Wilhelm was aware of the layout of the building and the allegations of illegal drug activity on its second floor. From Wilhelm's perspective, the warrant was not ambiguous. I cannot join, therefore, the majority's conclusion that Wilhelm knew prior to entering the Joneses' apartment that the warrant was invalid because it was open to more than one interpretation. Even though Wilhelm turned out to be mistaken in his belief that the warrant targeted plaintiffs' apartment, in my judgment, this mistake was not so unreasonable as to strip him of qualified immunity. *See Saucier*, 533 U.S. at 202 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986) ("qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law'")); *Anderson v. Creighton*, 483 U.S. 635, 641 (1987) (officer should not be stripped of qualified immunity where he conducted a search based on the erroneous belief that a bank robbery suspect was in plaintiff's home); *Maryland v. Garrison*, 480 U.S. 79, 87 (1987) ("The [Supreme] Court has recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants.").

Wilhelm did not choose to search plaintiffs' apartment at random or "maintain willful ignorance" of which apartment contained a methamphetamine lab. Rather, his belief that the warrant referred to the Joneses' apartment was based on his own observations of traffic in and out of the building followed by activity in plaintiffs' apartment. Wilhelm believed in good faith that the warrant referred to the Joneses' apartment. Only after he entered that apartment did Wilhelm understand that the warrant was defective.

It is undisputed that, once an officer discovers a defect in the description of the place to be searched, he is obligated to cease the search if he cannot determine which precise location is the proper subject of the warrant. *See Jacobs v. City of Chicago*, 215 F.3d 758, 769 (7th Cir. 2000). Wilhelm did just that. The facts of this case stand in marked contrast to those in *Jacobs*. In that case, the police officers had obtained a warrant to search a single-family residence. *Id.* at 763-64. When they arrived, the officers discovered that the address listed on the warrant was a multi-unit apartment building, which clearly should have alerted them that their search warrant was defective. *Id.* at 769. Despite there being "no indication that the officers were certain that plaintiffs' apartment was the proper subject of the search," the officers proceeded to search each of the apartments, entering the plaintiff's apartment only after they did not find what they were looking for in the first unit they chose to search. *Id.* at 771. This Court found that the execution of the search warrant was unreasonable, and that Supreme Court and Seventh Circuit precedent clearly established that a random search of apartments in a multi-unit building violates the Fourth Amendment. *Id.* The Court therefore held that the officers were not entitled to qualified immunity. *Id.* Unlike the officers in *Jacobs*, Officer Wilhelm did not conduct a "fishing expedition" or randomly search all the apartments in the building until he found the methamphetamine lab. Rather, he acted on his belief, albeit erroneous, that the warrant specifically targeted plaintiffs' apartment. As soon as he realized he was in the wrong apartment, he did what he was required to do—immediately call off the search and exit the apartment.

Under these circumstances, it is my view that it would not have been clear to a reasonable officer in Wilhelm's position that his entry into the Joneses' apartment violated plaintiffs' constitutional rights. I would hold that defendant was entitled to qualified immunity and affirm the district

court's entry of summary judgment in favor of defendant with respect to the warrant claim.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*